In the Matter of LOCAL UNION 1342 OF THE AMALGAMATED TRANSIT UNION, Respondent, v NIAGARA FRONTIER TRANSIT METRO SYSTEM, INC., Appellant.

Fourth Department, November 18, 1992

356

APPEARANCES OF COUNSEL

*Lawrence M. Meckler,* Buffalo, and *Jaeckle, Fleischmann & Mugel,* Buffalo *(Linda Joseph* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria,* Buffalo *(Eugene Salisbury* of counsel), for respondent.

## OPINION OF THE COURT

LAWTON, J.

This appeal concerns the proper interpretation and application of the terms of a collective bargaining agreement between respondent, Niagara Frontier Transit Metro System, Inc. (Metro), and petitioner, Local Union 1342 of the Amalgamated Transit Union (Local 1342). The facts are not in dispute. The last of a series of collective bargaining agreements that began in 1946 was entered into between the parties for the period August 1, 1987 to August 1, 1990.* That agreement, and all its predecessors, contained the same provisions for its modification and termination. Section 22 provided for modification of the agreement, as follows:

"CHANGES IN RENEWAL AGREEMENT

"22-1 *Proposal for Modifications.* At least sixty (60) days prior to the end of the original term of this Agreement, or of any automatic renewal thereof, either party may propose to the other in writing any modifications thereof. The parties shall use their best efforts to reach an agreement in respect to such proposals as expeditiously as possible.

"22-2 *Arbitration.* In the event, however, that the parties are unable to reach such an agreement, then such of the proposals as relate to wages, hours of work or pensions, shall be presented to a Board of Arbitration".

Section 23 provided for the termination of the agreement, as follows:

"DURATION AND RENEWAL

"23-1 This Agreement shall continue to August 1, 1990 and shall be automatically renewed from year to year thereafter, unless either party gives written notice to the other at least sixty (60) days prior to the expiration of the original term of

---

* The original agreement was entered into between International Railway Company and Local 1342. Shortly thereafter, Niagara Frontier Transit System, Inc. (NFT System) succeeded International Railway Company and operated under the agreement. On April 1, 1974, Metro purchased the operating assets of NFT System and assumed the agreement.

this Agreement, or any renewal thereof, that it elects to terminate this Agreement at the end of any such term."

On May 23, 1990, Local 1342 notified Metro that it sought modification of the agreement under section 22. It indicated that its proposed modifications would be sent shortly and offered a date to start negotiations. On May 30, 1990, Metro notified Local 1342 that it elected to terminate the agreement pursuant to section 23 and that it had proposed a new agreement that it was prepared to exchange.

On June 1, 1990, Local 1342 hand-delivered to Metro its set of proposed modifications to the agreement. Local 1342 also advised Metro that in its opinion section 22 and section 23 were not mutually exclusive. Metro countered that both parties must agree to negotiate under section 22 and that, if either party elected to terminate under section 23, then section 22 was no longer applicable.

While reserving their rights under the agreement, the parties proceeded to negotiate Metro's proposed new agreement and Local 1342's modifications to the prior agreement. Negotiations continued after the expiration of the agreement on August 1, 1990. On March 29, 1991, Local 1342 made a demand to arbitrate the issues of wages, hours of work, and pensions pursuant to section 22-2. That demand was rejected by Metro. Metro, however, indicated a willingness to arbitrate all of the unresolved issues, not just wages, hours of work and pensions.

On July 19, 1991, Local 1342 brought the present proceeding to compel arbitration pursuant to CPLR 7503 (a). Supreme Court found that Metro provided timely notice to terminate the agreement and that it expired on August 1, 1990. The court held, however, that the Taylor Law (Civil Service Law § 209-a [1] [e]) caused the provisions of the prior contract to continue, including the arbitration provisions of section 22, until a new agreement was reached and directed Metro to proceed to arbitration on the issues of wages, hours of work and pensions. Metro appeals from that determination.

■ Supreme Court was correct in finding that Metro provided a timely notice of termination under section 23, thereby causing the agreement to have expired as of August 1, 1990. We also agree with Supreme Court that, once the agreement was terminated, Metro could no longer be compelled to abide by one of the provisions thereof that established a method for making "changes" or "modifications" in the renewal of the

agreement *(see, Connecticut Co. v Division 425,* 147 Conn 608, 164 A2d 413; *MK & O Tr. Lines v Division No. 892,* 319 F2d 488, *cert denied* 375 US 944). In those cases almost identical renewal and termination provisions were found to create two distinct, separate and alternative methods for modifying or replacing the terms of the original agreement. They held that the renewal provision had been rendered inoperative when notice of termination of the collective bargaining agreement was given. Likewise, Metro's termination of the agreement rendered section 22 inoperative and, therefore, there was no contractual basis to compel the parties to arbitrate.

■ The question that remains is whether the Taylor Law mandates a different result. We hold that it does not.

Civil Service Law § 209-a (1) (e) provides that "[i]t shall be an improper practice for a public employer or its agents deliberately * * * to refuse to continue all the terms of an expired agreement until a new agreement is negotiated". That amended section was adopted to maintain the status quo as to the terms and conditions of employment between a public employer and its employees upon the expiration or termination of a collective bargaining agreement. In doing so, the Legislature responded to claims of public employee unions that certain public employers willfully failed to negotiate new agreements in good faith, seeking instead to unilaterally impose new terms and conditions of employment following the expiration of the agreement.

The enactment of the Civil Service Law § 209-a (1) (e), although ensuring the continuation of the terms and conditions of employment, does not create additional rights. Assemblyman Lentol, one of the drafters of that amendment to the Taylor Law, in a memorandum that accompanied the legislation made this clear when he stated that "[e]nactment of this bill would in no way provide any new or increased benefit to employees; it would merely continue the status quo until a new agreement is reached" (Mem of Assemblyman Lentol, 1982 NY Legis Ann, at 278).

The Public Employment Relations Board has repeatedly held that the above provision requires continuation of all existing rights under the prior agreement, but does not continue rights which by their very terms were intended to expire with the agreement. In *Matter of Suffolk County (Faculty Assn.)* (18 PERB ¶ 3030, *appeal dismissed as moot sub nom. Matter of Faculty Assn. v Public Empl. Relations Bd.,* 18

PERB ¶ 7016, *affd* 125 AD2d 307), an expired collective bargaining agreement expressly provided that a salary schedule applied to the base salaries " 'for the four academic years covered by this Agreement' " *(supra,* at 3062 [emphasis omitted]). The Board held that the refusal of the employer to pay the increments over the base salary after the expiration of the agreement did not violate the Taylor Law.

In *Matter of Hempstead Classroom Teachers Assn. (Hempstead Pub. School Dist.)* (24 PERB ¶ 4584, at 4719), the expired collective bargaining agreement expressly provided that "during [certain specified years] the Board agrees to pay $250.00 to each teacher" meeting certain standards. The Administrative Law Judge held that the school district did not violate Civil Service Law § 209-a when it refused to pay the $250 stipend after the expiration of the collective bargaining agreement, because the parties to an agreement may limit the statutory obligation to continue all of the terms of the expired agreement until a new one is negotiated by "including language which would terminate a benefit at the expiration of the agreement, or at some other * * * time" *(Matter of Hempstead Classroom Teachers Assn. [Hempstead Pub. School Dist.], supra,* at 4719; *see also, Matter of City of Newburgh [Local 589],* 16 PERB ¶ 3072). Similarly, the Court of Appeals in *Matter of County of Nassau (Nassau Community Coll.) v New York State Pub. Empl. Relations Bd.* (76 NY2d 579) held that a community college, following termination of a collective bargaining agreement, was not prohibited from making adjunct faculty assignments on a basis other than seniority as was required under the expired agreement.

Based upon the foregoing, it is clear that not all provisions of a bargaining agreement are continued upon termination or expiration. Here, the agreement provided that either Metro or Local 1342 could terminate it and insist upon the negotiation of a completely new agreement. The Taylor Law may not be used to take away that right. The status quo is maintained by holding that the section 23 notice rendered section 22 inapplicable to the negotiations for a new collective bargaining agreement. It is illogical to hold, as did Supreme Court, that by terminating the entire agreement Metro reactivated the very clause sought to be avoided by the termination *(see, Matter of County of Nassau [Nassau Community Coll.] v New York State Pub. Empl. Relations Bd., supra).*

■ Additionally, under the express terms of the agreement, once Metro served a timely notice to terminate, section 22 was

rendered inoperative. To reinstate section 22 renders meaningless the rights of either party to terminate the agreement and compels a party to proceed to arbitration when it would not otherwise be required. That result creates a new right that did not exist under the terms of the agreement at the time of termination. Rather than the status quo being continued, Supreme Court's interpretation of the Taylor Law changes the entire basis upon which the new collective bargaining agreement would be negotiated. To compel arbitration in this instance would impose upon the parties a status that has been reserved by the Legislature for police and firefighters *(see,* Civil Service Law § 209).

 Holding that section 22 no longer has any viability does not violate the letter or spirit of the continuation provisions of the Taylor Law. Employees will continue to receive all the benefits provided by the terminated agreement until a new agreement is reached. That is exactly the benefit intended to be conferred under that law—no more, no less. To hold otherwise leaves in the hands of the union the power to compel Metro to submit to arbitration the issues of wages, hours of employment and pensions. The inclusion of such an interest arbitration provision in collective bargaining agreements is a nonmandatory subject of bargaining *(see, e.g., Matter of Teamsters Local 687 [Town of Parishville],* 19 PERB ¶ 3053; *Matter of Teamsters, Local 687 [Town of Potsdam],* 19 PERB ¶ 3050). That means that a party cannot be required to negotiate the inclusion of an interest arbitration provision in a collective bargaining agreement. While the Taylor Law authorizes the parties to agree to arbitration as a method of settling labor disputes, it does not require it and we should not compel it when Metro was not even required to negotiate that issue.

The interpretation given by Supreme Court to the Taylor Law makes the arbitration provision of section 22 a permanent method of dispute resolution of wages, hours and pensions because Metro would be unable to terminate the collective bargaining agreement and negotiate an entirely new agreement. Supreme Court's decision would allow Local 1342 endlessly to seek interest arbitration on the limited subjects enumerated in section 22-2. That result contravenes public policy, both by compelling a public entity, which has broad responsibilities to the entire population of the State, to be bound forever to nonmandatory subjects of bargaining, i.e., interest arbitration, and by encumbering its ability to negoti-

ate an entirely new collective bargaining agreement which reflects the changing requirements and mandates of the public interest *(see, e.g., Matter of City School Dist. [New Rochelle Fedn. of Teachers],* 4 PERB ¶ 3060; *Matter of Herdle [West Irondequoit Teachers Assn.],* 4 PERB ¶ 3070, *affd sub nom. Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46).

Because there is no agreement to arbitrate, the petition to compel arbitration should be dismissed *(see, Matter of Acting Supt. of Schools v United Liverpool Faculty Assn.,* 42 NY2d 509).* The resolution of the parties' differences lies in the mediation and fact-finding provisions of the Taylor Law (Civil Service Law § 209 [1], [2], [3]), not in arbitration.

BOOMER, J. P., PINE, BALIO and DOERR, JJ., concur.

Judgment unanimously reversed, on the law, without costs, and petition dismissed.