31 F.3d 1191
 LOCAL 342, LONG ISLAND PUBLIC SERVICE EMPLOYEES, UMD, ILA,
AFL-CIO; Local 342 Insurance Trust, by Harry Hennessey and
Sal Fabbrocino, Its Trustees; all Present and Former
Employees of the Town of Huntington Represented by Local
342, individually; Harry Hennessey, Sal Fabbrocino,
individually, Plaintiffs-Appellants,
v.
TOWN BOARD OF the TOWN OF HUNTINGTON; Stephen C. Ferraro,
as Town Supervisor and individually; Anne Hurley, as
Councilman and Individually; Kenneth Christensen, as
Councilman and Individually; Josephine L. Gambino, as
President of the New York State Department of Civil Service;
New York State Department of Civil Service, Defendants-Appellees.
 No. 1186, Docket 93-9073.
 United States Court of Appeals,
Second Circuit.
 Argued April 14, 1994.
Decided July 28, 1994.
 
 Leo P. Davis, East Moriches, NY (Benjamin D. Russo, Patchogue, NY, of counsel), for plaintiffs-appellants.
 Thomas C. Greble, New York City (Andrew P. Marks, Roberts & Finger, of counsel), for defendants-appellees.
 Before: LUMBARD, FEINBERG and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Appellants appeal from a judgment entered on September 21, 1993 in the United States District Court for the Eastern District of New York (Platt, J.) denying their motion for a preliminary injunction to enjoin appellee municipality from terminating plaintiff-appellant Local 342 Insurance Trust ("Trust") as health benefits provider for its employees and dismissing the complaint. According to the complaint, the termination of the Trust as health benefits provider violated the Contracts Clause of the United States Constitution and deprived appellants of their rights to procedural and substantive due process as guaranteed by the Fourteenth Amendment. The district court determined that it lacked subject matter jurisdiction over the action because the complaint failed to state a colorable claim under the pertinent provisions of the Constitution.
 
 
 2
 For the reasons that follow, the judgment of the district court is affirmed.
 
 BACKGROUND
 
 3
 For a number of years prior to February of 1990, defendant-appellee the Town Board of the Town of Huntington ("Town" or "Town Board") provided health and hospital insurance coverage to all of its employees and retirees through the "Empire Plan," a state-run insurance program that provides health insurance coverage to municipal employees. In December of 1989, the Town and plaintiff-appellant Local 342 ("Local 342" or "Union") became parties to a collective bargaining agreement ("CBA") that was made retroactive to January of 1989. The CBA expired on December 31, 1991. The Town's arrangement with the Empire Plan was reflected in Article 13 of the CBA, which obligated the Town to remit all necessary payments in order to maintain the plan for its employees.
 
 
 4
 In late 1989, shortly before the signing of the CBA, the Town administration acceded to Local 342 lobbying efforts and agreed to switch health benefits providers. The new provider of benefits to Town employees and their families was the Trust, an entity that had never provided health benefits of any kind.[1] The changeover was to become effective February 1, 1990.
 
 
 5
 The switch to the Trust was subject to two significant conditions, both of which were expressed in the CBA. First, the Trust's health benefits program was to be administered by the Provident Casualty Insurance Company, a large, experienced company in the field of medical insurance. Thus, Section A of Article 13 of the CBA provided that "[e]ffective February 1, 1990 the EMPLOYER and the UNION agree to implement a plan of insurance to be administered by Provident Life and Casualty Insurance Company. Said plan will cover all incumbent workers and retirees." The second proviso was that the change to the Trust as benefits provider was to be on a trial basis only. This was reflected by a "sunset clause" in Article 13 of the CBA providing that "said plan will be in effect concurrently with the collective bargaining Agreement."
 
 
 6
 In late 1991, the Trust unilaterally terminated its relationship with Provident and informed the Town that the Trust would be self-administered. Although the Town took the position that this was a material breach of the CBA and that it was very concerned about the Trust's ability adequately to administer the benefits without Provident as administrator, it continued to maintain the Trust as its benefits provider for approximately eighteen months following the December 31, 1991 expiration of the CBA. During this period, the Town continued to negotiate with the Union regarding health benefits coverage. For a substantial period of time, these negotiations were conducted under the direction of an independent mediator appointed by the Public Employment Relations Board ("PERB").
 
 
 7
 Despite repeated attempts by the Town to obtain information regarding the maintenance and implementation of health benefits by the Trust, the Union apparently was less than cooperative in providing the requested information. As a result, the Town filed an improper practice charge with PERB over the Union's failure to disclose information. According to the Town, the alleged stone-walling by the Union, coupled with increasing employee complaints about reduced benefits, increased deductibles and late claim payments, made the situation "intolerable." The Town, therefore, began to examine its options regarding health insurance for its employees.
 
 
 8
 On or about April 15, 1993, the Town, through its special labor counsel, informed the Union that it was unwilling to continue the status quo. Local 342 President Hennessey immediately responded by arguing against a switch from the Trust as health benefits provider and threatening legal action if the Town altered the arrangement with the Trust.
 
 
 9
 Thereafter, a number of Town Board meetings were held to discuss the matter of health insurance. During these meetings, Hennessey addressed the Town Board both in person and in writing. By Resolution dated May 7, 1993, the Town Board decided to cease contributions to the Trust for health and medical benefits and determined to return to the Empire Plan, effective July 1, 1993.[2] Local 342 was notified of the Town's decision by letter dated May 11, 1993.
 
 
 10
 In response to the Town's decision to revert to the Empire Plan, Local 342 immediately filed an improper practice charge with PERB alleging a violation of provisions of New York's Taylor Law, N.Y.Civ.Serv.Law Secs. 209-a.1(d), (e) (McKinney 1983 & Supp.1994). The gravamen of the Union's charge was that, according to section 209-a.1, the Town was obligated to negotiate in good faith with the Union and was required to continue payments to the Trust until a new CBA had been negotiated. Additionally, by letter dated June 3, 1993, the Union filed a grievance against the Town and subsequently served a Demand for Arbitration of the grievance on June 19.[3]
 
 
 11
 On June 25, 1993, the Union commenced the action that gives rise to this appeal. In its complaint, the Union alleged that the Town's unilateral termination of the Trust as benefits provider was violative of the Contracts Clause of the United States Constitution and that the termination deprived the Union of substantive due process rights guaranteed by the Fourteenth Amendment. The Union also moved in the district court for a preliminary injunction restraining the Town from changing health benefits providers. On September 15, 1993, the district court denied the motion for a preliminary injunction and dismissed the complaint, finding that the "complaint fails to state a claim arising under the provisions of the United States Constitution and that, as such, this Court does not have subject matter jurisdiction to hear the matter." The district court specifically decided that the Union "ha[d] failed to state a claim for the deprivation of substantive due process pursuant to the Fourteenth Amendment."
 
 
 12
 On this appeal, the Union has abandoned its Contracts Clause claim, choosing instead to advance only the argument that the Town's decision to terminate the Trust as health benefits provider was violative of its due process rights.
 
 DISCUSSION
 
 13
 At the outset, we note that there appears to be some confusion surrounding the type of due process deprivation the Union claims to have suffered. In the complaint in this action, Count II is captioned "THE SUBSTANTIVE DUE PROCESS CLAIM AGAINST EACH AND EVERY DEFENDANT." However, notwithstanding this label, the Union combines notions of both procedural and substantive due process in Count II:44. Based upon the contract between the Town and Local 342, plaintiffs acquired under New York State Law a legitimate claim of entitlement to the payments the Town is required to deposit into the Trust and in the benefits to be derived from the sums so deposited.
 
 
 14
 * * * *
 
 
 15
 * * *
 
 
 16
 46. The Town Board's May 7, 1993 resolution and defendants' conduct subsequent thereto unequivocally expresses defendants' intention to imminently deprive plaintiffs of their entitlement to the payments to the Local 342 Insurance Trust without due process of law.
 
 
 17
 47. Defendants' conduct and imminent conduct constitute arbitrary, capricious, irrational, despotic exercise of governmental power unredeemed by any legitimate governmental interest....
 
 
 18
 The blending of these two doctrines carried over to the decision of the district court. In its Memorandum and Order of September 15, 1993, the district court disposed of the Union's due process claim through an analysis of the procedure surrounding the Town's termination of the Trust as insurance carrier. Specifically, it discussed the pre- and post-deprivation remedies available to the Union. The district court then concluded that "[p]laintiffs have failed to state a claim for the deprivation of substantive due process." (emphasis added)
 
 
 19
 On appeal, the Union contends that the district court "applied the wrong test in analyzing plaintiffs' substantive due process claim." We decline to address this contention because, even assuming that it is true, the Union's cause is not aided by this error. As we explain below, the Union was not deprived of any protected entitlement without due process nor did it suffer an infringement of any right protected by substantive due process.
 
 I. Procedural Due Process
 
 20
 The Union claims that the Town violated the CBA, the New York State Taylor Law and unspecified "existing practices, uses and understandings," thereby depriving the Union of a property right without due process of law. Specifically, the Union contends that the Taylor law proscribes the unilateral alteration of the terms of the CBA and that the Town's allegedly unauthorized and unilateral modification of the CBA by virtue of the May 7 resolution deprived the Union of a legitimate entitlement without due process of law.
 
 
 21
 In order to sustain an action for deprivation of property without due process of law, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." Mehta v. Surles, 905 F.2d 595, 598 (2d Cir.1990) (per curiam). Accordingly, our threshold inquiry is to determine whether the Trust was entitled to receive continued payments from the Town.
 
 
 22
 "The existence and dimensions of property interests are defined by 'existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " General Elec. Co. v. New York State Dep't of Labor, 936 F.2d 1448, 1453 (2d Cir.1991) (quoting Goetz v. Windsor Cent. Sch. Dist., 698 F.2d 606, 608 (2d Cir.1983) (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972))). Recently, we reviewed what is necessary to elevate a mere contract right to the level of a protectible entitlement:
 
 
 23
 In order for a person to have a property interest in a benefit such as the right to payment under a contract, "[h]e must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." [Roth, 408 U.S. at 577, 92 S.Ct. at 2709.] When determining whether a plaintiff has a claim of entitlement, we focus on the applicable statute, contract or regulation that purports to establish the benefit. We note that although a public contract can confer a protectible benefit, not every contract does so, and the type of interest a person has in the enforcement of an ordinary commercial contract often "is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection." S & D Maintenance Co. v. Goldin, 844 F.2d 962, 966 (2d Cir.1988).
 
 
 24
 Martz v. Incorporated Village of Valley Stream, 22 F.3d 26, 29-30 (2d Cir.1994) (citations omitted). Here, the appellants assert that they had a protected property right in the continuation of payments from the Town to the Trust by virtue of Article 13 of the CBA and the Taylor Law, N.Y.Civ.Serv.Law Sec. 209-a.1. This contention, however, fails to withstand scrutiny.
 
 
 25
 The Union's argument, at bottom, is that the Taylor Law effectively guaranteed that the Town would continue payments to the Trust until a new collective bargaining agreement was signed. Under the provisions of the Taylor Law, "[i]t shall be an improper practice for a public employer or its agents deliberately ... to refuse to continue all the terms of an expired agreement until a new agreement is negotiated." N.Y.Civ.Serv.Law Sec. 209-a.1(e).
 
 
 26
 As is obvious from the quoted language, the Taylor law simply requires an employer to continue to abide by the terms of an expired collective bargaining agreement; it neither creates nor confers any new right or benefit in favor of employees. Indeed, the Union itself recognized this in its brief on appeal: "[T]he purpose of Sec. 209-a(1)(e) is to maintain the status quo in the post-expiration period until a new agreement is reached, but is not intended to create new or increased benefits." Appellant's Br. at 16; see also Local Union 1342 of the Amalgamated Transit Union v. Niagara Frontier Transit Metro Sys., Inc., 183 A.D.2d 355, 590 N.Y.S.2d 641, 643 (1992) (Taylor Law " 'in no way provide[s] any new or increased benefit to employees; it ... merely continue[s] the status quo until a new agreement is reached' " (quoting Assemblyman Joseph R. Lentol, 1982 NY Legis.Ann., at 278)), leave to appeal denied, 81 N.Y.2d 710, 599 N.Y.S.2d 804, 616 N.E.2d 159 (1993). Accordingly, if the Trust had no entitlement to receive payments from the Town prior to the expiration of the CBA, the Taylor Law cannot create such an entitlement after the expiration of that agreement.
 
 
 27
 In its attempt to demonstrate that New York law did, in fact, entitle the Trust to payments from the Town, the Union offers us little. Sections 203 and 208 of the New York Civil Service Law--the Union's passing reference to which we will assume to be a further argument in favor of entitlement to payment--provide no support for the Union's position. These sections confer only two simple rights, neither of which is relevant to the issue before us. Section 203 confers upon public employees the right to be represented by a union and have the union collectively bargain on their behalf. See N.Y.Civ.Serv.Law Sec. 203. Section 208 provides a correlative right to a union to be recognized and to serve as the public employees' sole negotiating agent. See id. Sec. 208. Clearly, neither section operates to entitle the Trust to the receipt of payments from the Town, and it is apparent that the Union and the Trust possessed, at most, nothing more than a simple contractual right to receive the premium payments.
 
 
 28
 In similar situations,[4] we repeatedly have concluded that plaintiffs have no protectible interest. See, e.g., Martz, 22 F.3d at 31 (where plaintiff "simply ... alleg[ed] the breach of an ordinary contract[ ] [t]he right to payment on such a contract d[id] not rise to the level of a constitutionally protected property interest"); S & D Maintenance Co. v. Goldin, 844 F.2d 962, 966 (2d Cir.1988) ("[W]henever a person contracts with a state, breach by the state can be considered a denial of his entitlement to performance of the contract. If the concept of 'entitlement' were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.")
 
 
 29
 It is clear that the Union enjoyed no constitutionally protected entitlement to the payments by the Town to the Trust for the funding of health benefits. Having never had a constitutionally protected right to such payments during the life of the CBA, the Union cannot now use the New York State Taylor Law to create alleged benefits and expand its rights following the expiration of that agreement. Because we conclude that the Union has demonstrated no protectible property interest in this case, we need not decide whether the Town's manner of termination of payments to the Trust was sufficient to satisfy due process.
 
 II. Substantive Due Process
 
 30
 As we noted above, appellants also argue that the termination of the Trust as health benefits provider deprived them of substantive due process rights. We reject this argument as entirely without merit.
 
 
 31
 It is well settled that, where "the alleged right ... cannot be considered ' "so rooted in the traditions and conscience of our people as to be ranked as fundamental," ' " notions of substantive due process will not apply. Reno v. Flores, --- U.S. ----, ----, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993) (quoting United States v. Salerno, 481 U.S. 739, 751, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), overruled on other grounds, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) and Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964))). Substantive due process protects only those interests that are "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937). Indeed, it is axiomatic that the doctrine of judicial self-restraint requires courts "to exercise the utmost care" when presented with a request to define or develop rights in this area. Collins v. City of Harker Heights, --- U.S. ----, ----, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992).
 
 
 32
 Here, the Union contends that its substantive due process rights were violated when the Town deprived it of its "entitlement to the payments to the Local 342 Insurance Trust without due process of law." We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection. Such rights are not the type of "important interests that have heretofore been accorded the protection of substantive due process." Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 230, 106 S.Ct. 507, 516, 88 L.Ed.2d 523 (1985) (Powell, J., concurring); see Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1978) (collecting cases discussing traditional interests protected by substantive due process, such as procreation, marriage and family life). We agree with the Sixth Circuit's statement that "[r]outine state-created contractual rights are not 'deeply rooted in this Nation's history and tradition,' and, although important, are not so vital that 'neither liberty nor justice would exist if [they] were sacrificed.' " Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir.1990) (quoting Bowers v. Hardwick, 478 U.S. 186, 191-92, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986) (quoting Moore v. City of E. Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977) (opinion of Powell, J.) and Palko, 302 U.S. at 326, 58 S.Ct. at 152)) (alteration in Bowers ).
 
 
 33
 In view of our conclusion that the Union possessed no protectible property interest in the insurance payments, it would appear obvious that the Town's termination of those payments in no way violated the substantive due process rights of Local 342. Cf. Ewing, 474 U.S. at 229, 106 S.Ct. at 515 (Powell, J., concurring) ("Even if one assumes the existence of a property right, ... not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution."). Other courts have reached similar conclusions. See, e.g., United of Omaha Life Insur. Co. v. Solomon, 960 F.2d 31, 35 (6th Cir.1992) (per curiam) (contract to provide insurance to municipal employees does not give rise to fundamental right protected by substantive due process); Charles, 910 F.2d at 1353 ("liberty and justice are [not] threatened, in the constitutional sense, by the failure of the government and its officials to abide by their contract"); Reich v. Beharry, 883 F.2d 239, 243-45 (3d Cir.1989) (government refusal to pay bill for professional services does not violate substantive due process). Accordingly, because the Union has failed to point to any infringement of its substantive due process rights, its complaint properly was dismissed.
 
 CONCLUSION
 
 34
 For the above stated reasons, the judgment of the district court dismissing the Union's complaint is affirmed.
 
 
 
 [1]
 The Trust was established in January of 1974. The sole Trustees of the Trust are plaintiffs-appellants Messrs. Hennessey and Fabbrocino. Hennessey is the President of Local 342 and Fabbrocino is its Treasurer. The Trustees have the right to amend or terminate the Trust upon approval of the executive board of the Union
 
 
 [2]
 The Town continues to make contributions to the Trust for dental, optical, life and disability benefits in accordance with Section D of Article 13 of the CBA. The record is barren of any evidence that the Town received complaints regarding benefits under these plans or was in any other way dissatisfied with the Trust's administration of these benefits
 
 
 [3]
 We were informed by counsel that, as of the date of oral arguments, no decision had been rendered in the arbitration
 
 
 [4]
 The Union's reliance upon our decisions in Kraebel v. New York City Dep't of Hous. Preservation & Dev., 959 F.2d 395 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992) and General Elec. Co. v. New York State Dep't of Labor, 936 F.2d 1448 (2d Cir.1991), is misplaced because, in each case, a state statute clearly gave the claimants a legitimate claim of entitlement to the contested benefit. See Kraebel, 959 F.2d at 404 (landlord had property interest based upon state law entitlement to reimbursement of senior citizen rental income); General Elec. Co., 936 F.2d at 1453 (New York labor law created entitlement to payment of full contract price except if contractor fails to pay prevailing wage rates and provided for hearing to determine whether cause existed to deprive contractor of full contract price)