# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1381

CA 12-01051

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, AND VALENTINO, JJ.

---

IN THE MATTER OF NIAGARA FRONTIER TRANSIT
METRO SYSTEM, INC., PETITIONER-APPELLANT,

V                                                    MEMORANDUM AND ORDER

AMALGAMATED TRANSIT UNION LOCAL UNION 1342
AND VINCENT G. CREHAN, PRESIDENT/BUSINESS
AGENT, AMALGAMATED TRANSIT UNION LOCAL UNION
1342, RESPONDENTS-RESPONDENTS.

---

DAVID J. STATE, BUFFALO, JAECKLE FLEISCHMANN & MUGEL, LLP (RANDALL M. ODZA OF COUNSEL), FOR PETITIONER-APPELLANT.

REDEN & O'DONNELL, LLP, BUFFALO (JOSEPH E. O'DONNELL OF COUNSEL), FOR RESPONDENTS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Erie County (Tracey A. Bannister, J.), entered February 14, 2012. The order denied the petition to stay arbitration and granted the cross motion of respondents to compel arbitration.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the cross motion is denied and the petition is granted.

Memorandum: This case involves a labor dispute arising from a collective bargaining agreement (CBA) between petitioner, a public benefit corporation that provides bus and light rail transit service, and respondent Amalgamated Transit Union Local Union 1342 (Local 1342), which represents a unit of petitioner's employees. Petitioner appeals from an order denying its petition to stay arbitration and granting respondents' cross motion to compel arbitration.

Since 1946, petitioner and Local 1342 have been parties to a series of CBAs, the most recent of which covered the period from August 1, 2006 to July 31, 2009. In May 2009, shortly before the most recent CBA expired, petitioner notified Local 1342 that it was exercising its right to terminate the CBA. In August 2011, following unsuccessful negotiations between the parties, Local 1342 demanded that the terms and conditions of a new CBA be determined by compulsory "interest arbitration." Petitioner rejected that request and commenced this proceeding seeking a stay of arbitration pursuant to CPLR article 75. In cross-moving for an order compelling arbitration, respondents contended that a right to compulsory interest arbitration

was conferred by a so-called Section 13 (c) Agreement (Agreement) entered into by the parties in 1973 pursuant to the federal Urban Mass Transportation Act of 1964 (UMTA). Supreme Court agreed with respondents that the Agreement entitled Local 1342 to compulsory interest arbitration. That was error. We thus agree with petitioner that the court should have granted its petition and denied the cross motion.

As a preliminary matter, we reject petitioner's contention that our 1992 decision in *Matter of Local Union 1342 of Amalgamated Tr. Union v Niagara Frontier Tr. Metro Sys.* (183 AD2d 355, *lv denied* 81 NY2d 710) (*ATU*) collaterally estopps Local 1342 from now seeking compulsory interest arbitration. *ATU* concerned the interplay between sections 22 and 23 of the CBA, not the general question implicated here, i.e., whether compulsory arbitration is *ever* available to determine the terms of a *new* CBA or, more specifically, whether such arbitration is available under the Agreement. Thus, because the issues in *ATU* are not identical to those raised in this case, our decision in *ATU* does not have collateral estoppel effect here (*see generally Buechel v Bain*, 97 NY2d 295, 303-304, *cert denied* 535 US 1096).

We nevertheless agree with petitioner that the Agreement does not entitle Local 1342 to compulsory interest arbitration. Section 13 (c) agreements are required by the UMTA in order to preserve (but not enhance) the existing union rights of transit employees when federal funds are used by public entities to purchase private transit companies (*see Jackson Tr. Auth. v Local Div. 1285, Amalgamated Tr. Union, AFL-CIO-CLC*, 457 US 15, 17). As the Second Circuit stated, legislative history "makes it reasonably clear that [UMTA section] 13 (c) was intended to preserve the rights of employees under existing collective bargaining agreements and to maintain the status quo with respect to the employer's obligation to bargain collectively, *not to create new rights for the employees or enhance existing ones*" (*Division 580, Amalgamated Tr. Union, AFL-CIO v Central N.Y. Regional Transp. Auth.*, 556 F2d 659, 662 [emphasis added]). Thus, the Agreement could not have conferred a right to compulsory interest arbitration that, indisputably, did not exist prior to its adoption in 1973 and has not been included in any subsequent CBA.

Moreover, we reject respondents' contention that paragraph 13 of the Agreement specifically authorizes compulsory interest arbitration. Although certain language in paragraph 13, if read in isolation, might be construed to create a right to compulsory interest arbitration, paragraphs 19 and 28 make clear that the parties' previously existing arbitration rights (which, as noted, did not include compulsory interest arbitration) would not be *expanded* by the Agreement. It is therefore apparent from a reading of the entire Agreement that a right to compulsory interest arbitration was not created thereby. Rather, consistent with the purpose of section 13 (c) of the UMTA, the Agreement was designed merely to maintain the status quo with respect to the parties' collective bargaining framework.

Nor are we persuaded by respondents' contention that a footnote

in the 1975 Model Section 13 (c) Agreement, which largely tracks the language of the Agreement here, demonstrates that the parties agreed to compulsory interest arbitration in 1973.  Although the footnote references "interest arbitration proceedings," it does not necessarily follow that the parties thereby agreed to be compelled to participate in such proceedings as part of each contract negotiation cycle.  We note that the parties may agree to participate voluntarily in interest arbitration on an ad hoc basis, as they did, for example, in 1981, and that may well explain the reference to interest arbitration in the footnote.  We also note that respondents placed no emphasis on the footnote before Supreme Court and made no mention of it in the argument portion of their brief on appeal; instead, the footnote is mentioned only in the statement of facts, while the argument focuses on the claim that interest arbitration is mandated by paragraph 13 of the Agreement.  We address the contention only because respondents' attorney placed heavy emphasis on the footnote during oral argument.

In any event, even assuming, arguendo, that the Agreement entitles Local 1342 to interest arbitration over petitioner's objection, we would conclude, as we did in *ATU*, that such a result "contravenes public policy, both by compelling a public entity, which has broad responsibilities to the entire population of the State, to be bound forever to nonmandatory subjects of bargaining, i.e., interest arbitration, and by encumbering its ability to negotiate an entirely new collective bargaining agreement which reflects the changing requirements and mandates of the public interest" (*ATU*, 183 AD2d at 361-362).

In light of our determination, we need not address petitioner's remaining contentions.

Entered:  February 1, 2013                    Frances E. Cafarell
                                              Clerk of the Court