Kelly IRWIN, an individual, and Rosario Mangio, an individual, Plaintiffs,

v.

CITY OF NEW YORK, a municipal corporation, Department of Parks & Recreation of the City of New York, a municipal agency, Betsy Gotbaum, individually and in official capacity, Patrick Pomposello, individually and in official capacity, and Charles McKinney, individually and in official capacity, Defendants.

No. 94 Civ. 2197 (LAK).

United States District Court, S.D. New York.

Oct. 19, 1995.

Steven I. Hilsenrath, Tatiana D. Macedo, New York City, for Plaintiffs.

Terryl Ann Sellers, Nancy Hirschmann, Assistant Corporation Counsel, New York City, Paul A. Crotty, Corporation Counsel of City of New York, for Defendants.

## OPINION

KAPLAN, District Judge.

Plaintiffs are owners of a houseboat docked at the 79th Street Boat Basin located in the Hudson River at 79th Street in Manhattan's Riverside Park. The Boat Basin is managed and operated by the New York City Department of Parks and Recreation ("Department of Parks"). The only claim pressed

by plaintiffs in opposition to the defendants' motion for summary judgment is that the City's refusal to offer them a new dockage permit for their houseboat violated their right to due process under 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 6, of the New York State Constitution. The parties cross-move for summary judgment.

### Background

Plaintiff Kelly Irwin has been a member of the 79th Street Boat Basin community since 1987. (Irwin Aff. ¶ 8) In 1989, Irwin obtained a seasonal dockage permit by the City for her boat, the "Midrift," upon which she and her husband, plaintiff Rosario Mangio, whom she married in 1992, now permanently reside. (*Id.* ¶¶ 8, 17) The permit authorized Irwin to dock the "Midrift" in the Boat Basin from May 1, 1989 through April 30, 1990. By its terms, the permit expired in one year (*see* dockage permit, Irwin Aff. Ex. B § 3.0) and was "terminable at will by Commissioner [of the Department of Parks] upon good cause being shown." (*Id.* §§ 2.1, 2.2)

From the time Irwin's 1989–90 dockage permit expired on April 30, 1990 until May 1992, some residents of the Boat Basin, represented by the Hudson Harbor Preservation Association (the "HHPA"), began to withhold payment of dockage permit fees. Plaintiffs have characterized the withholding as a "rent strike" by which the residents of the marina sought to elicit concessions from the City and the Department of Parks for more favorable conditions. (*See* Irwin Aff. ¶ 9) During this period, some HHPA members paid their dockage fees into an escrow fund set up by the HHPA, while others paid the fees to the Department of Parks or ceased paying the fees altogether.

In July 1991, during the "rent strike," the plaintiffs began construction of an additional bedroom on the top of the "Midrift." (*See* Irwin Aff. ¶ 10; McKinney Aff. ¶ 28) The Department of Parks and the 1989–90 dockage permit,[1] require that residents of the marina obtain written consent from the Department prior to making any structural modifications to their boats. (McKinney Aff. ¶¶ 24–25; *see* Dockage Permit, Irwin Aff. Ex. B § 6.14 [2]) Defendants assert that plaintiffs' construction was not in compliance with the terms of their permit, which reflects Department policy. Plaintiffs did not seek advance approval from the Department.

When the administrator of Riverside Park, Charles McKinney, learned about plaintiffs' unauthorized construction, he requested that the construction stop and that plaintiffs submit an application to the Department of Parks for permission to proceed with the construction. (McKinney Aff. ¶ 29 & Ex. C) He further requested that Irwin and Mangio provide the Department with "a dimensioned plan and side view." (*Id.* Ex. D) Irwin submitted to McKinney two drawings of the proposed construction with a letter in which she falsely claimed that plaintiffs were constructing "an 'inclosed helm station' which is necessary to the operability of the boat." (*See id.* Ex. E) In a September 9, 1991 letter, McKinney denied plaintiffs permission for the modifications and advised them to remove the construction from the top of the boat. (*Id.* Ex. F)

Plaintiffs assert that the Department's action was arbitrary and unreasonable because the expired 1989–90 dockage permit did not expressly prohibit increases in the height of the boats in the marina. (*See id.* Ex. G, I & K) They further argue that Section 6.14 of the permit provides that permission for new

---

**1.** The Department of Parks and the HHPA agreed that the terms of the expired 1989–90 dockage permit would govern while negotiations were underway. (*See* Okin Letter of November 23, 1992, Irwin Aff. Ex. C)

**2.** Section 6.14 of the 1989–90 dockage permit provides:

"No structural modifications may be made to the superstructure of Vessel without the express written consent of Parks, which shall not

be unreasonably withheld. No modifications will be permitted that will have an adverse effect upon the appearance of the Boat Basin or which will in any way limit or appear to limit the movement of the vessel or change the center of gravity to the extent that the vessel will not be seaworthy or restrict navigation by removal of the helmstation or inhibiting the line of sight forward from the helm." (Irwin Aff. Ex. B)

construction "cannot be unreasonably withheld." McKinney claims, however, that the Department routinely denies requests for permission to make modifications that would increase the height of boats in the marina. (*Id.* ¶ 25) Plaintiffs resumed construction on the "Midrift," and McKinney informed them that they would be ineligible to receive a new dockage permit unless they removed the construction from the boat by October 1, 1991. (*Id.* Ex. H)

Plaintiffs' dispute with the Parks Department played out against the broader background of the "rent strike." The Department met with representatives of the HHPA several times between May 1990 and May 1992 to discuss the physical condition of the 79th Street Boat Basin. (McKinney Aff. ¶¶ 20–21) Plaintiffs assert that the Department of Parks and the HHPA reached an agreement, evidenced by a May 6, 1992 letter to counsel for the HHPA from Elizabeth Okin, an Assistant Counsel to the Department of Parks. (*See* Irwin Aff. Ex. E) In the May 6 letter, entitled "79th Street Boat Basin Dockage Agreement," Okin stated that the Department of Parks "will offer [dockage permits] to those boaters with up-to-date dockage accounts dating from the final payments made under the expired contract, that is, payments made through April 1990." (*Id.*)

Plaintiffs assert that the letter describes an enforceable agreement between HHPA and the Department in which the City conferred on residents of the marina who possessed a 1989–90 permit an entitlement to a new dockage permit. (Cpt. ¶ 38) Defendants, on the other hand, maintain that no enforceable agreement conferring an entitlement to a dockage permit was reached. They argue that the Okin letter is not evidence of an agreement but rather that it finalized negotiations for new permits between the Department of Parks and those residents of the marina who had paid all dockage fees that had accrued since May 1990 and who were in compliance with the terms of the 1989–90 permit. (*See* McKinney Aff. ¶¶ 22–23; Okin Letter of November 23, 1992, Irwin Aff. Ex. C) Defendants assert that Irwin was neither current on her dockage fees nor in compliance with the terms of the prior dockage permit due to unauthorized construction on her boat. (*Id.* ¶¶ 23–24)

The parties' dispute was the subject of extensive correspondence between the plaintiffs' attorney and Elizabeth Okin of the Corporation Counsel's office, acting on behalf of the Parks Department. (Irwin Aff. ¶¶ 24–33). Negotiations were conducted on plaintiffs' behalf with Charles McKinney, Administrator of Riverside Park. (*Id.* ¶ 34) Eventually, plaintiffs met with Manhattan Borough Commissioner of Parks Patrick Pomposello on February 28, 1994. (*Id.* ¶ 55) Plaintiffs claim that they then reached an oral agreement with Pomposello that the Department would issue plaintiffs a new dockage permit provided that plaintiffs paid their outstanding dockage fees and made a $3,000 contribution to the Riverside Park Fund. (Irwin Aff. ¶ 55) They assert that Pomposello represented to them that there would be no difficulty getting the agreement approved by the Commissioner of the Department of Parks, Andrew Stern. (*Id.* ¶ 56) The proposed agreement, however, was not approved by Stern. (*See* Irwin Aff. ¶ 58) The Department of Parks has not issued plaintiffs a new permit for their houseboat.

*Discussion*

The parties cross-move for summary judgment. In order to prevail on a motion for summary judgment, a party must establish that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

*Procedural Due Process*

The State may not deprive an individual of property or liberty without due process of law. Plaintiffs claim that defendants' refusal to issue a new dockage permit for the "Midrift" violated their procedural due process rights by depriving them of a property right without notice and a hearing as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

In order to prevail in such an action, a plaintiff must "first identify a property right, second show that the State has deprived him of that right, and third show

that the deprivation was effected without due process." *Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir.1994) (quoting *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir.1990) (per curiam)). Even where a plaintiff establishes that he or she was deprived of a property right without a pre-deprivation hearing, the existence of an adequate and meaningful state post-deprivation remedy may be sufficient to satisfy the procedural component of the Due Process Clause. *Hudson v. Palmer,* 468 U.S. 517, 530–32, 104 S.Ct. 3194, 3202–03, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 537–38, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987).

*Existence of a Property Right in the Permit*

■ In this case, plaintiffs claim a property interest in a new dockage permit arising out of one or both of two alleged contracts— the Parks Department—HHPA and Pomposello agreements. In order to have a property interest that is subject to due process protection, a plaintiff "must have more than a unilateral expectation of it. [The plaintiff] must, instead, have a legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such property interests "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

■ The meeting with Pomposello produced no enforceable agreement between the parties. Any agreement that might have resulted from the settlement negotiations between plaintiffs and the City would have required the approval not only of Parks Commissioner Stern but also, pursuant to Section 93, subd. i, of the City Charter, of the Comptroller of the City of New York.[3] Neither Stern nor the Comptroller gave approval to the terms agreed upon. (*See* Irwin Aff. ¶ 58) Indeed, even on plaintiffs' version of

the relevant events, the Department told plaintiffs that the terms would require approval. The Court therefore holds that no binding oral agreement, giving rise to a property interest that warrants due process protection, was reached as a result of the February 29, 1994 meeting.

■ The question whether the May 1992 agreement to settle the rent strike between the Department of Parks and the HHPA gave rise to a property interest is impossible to resolve on these motions. The City contends, first, that it agreed to provide new permits only to residents of the marina who were (a) current on their accounts with the Department of Parks and (b) in compliance with the terms of their expired permits, and not to boat owners "with individual disputes" pending with the Department. (Manahan Aff. ¶ 10) The City therefore refused to accept payment on behalf of the plaintiffs and allegedly made it clear to a representative of the HHPA that plaintiffs and other boat owners with individual disputes "would be subjected to additional discussions, prior to the issuance of their permits." (*Id.*) The City's account, however, is at odds with the Okin letter which, while not dispositive, raises an issue of fact as to the terms of the alleged agreement.

The City next argues that there is no property interest under the terms of the expired permit because the City has the right to terminate the permit at will. (*See* Irwin Aff. Ex. B ¶¶ 2.1, 10.0–10.5) It relies on *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1062 (2d Cir.), *cert. denied,* ―― U.S. ――, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993), for the proposition that a right terminable at will under State law is not a protected property interest. The difficulty with the argument is that the terms of the expired dockage permit are far from clear. While there is language supporting the City's position, there is also language suggesting that the permit could be terminated only for cause. (*See* Irwin Aff. Ex. B ¶¶ 2.2, 10.0–10.5).

---

**3.** Section 93, subd. i, provides in relevant part that "The comptroller shall have the power to settle and adjust all claims ... against the city ..."

■ The uncertainties concerning the content of the Parks Department—HHPA agreement and the ambiguity of the dockage permit compel the conclusion that there are genuine issues of fact material to the determination whether plaintiffs had a property interest in a dockage permit or its renewal. Nevertheless, defendants would be entitled to summary judgment dismissing the procedural due process claim if plaintiffs received all the process that was due, assuming *arguendo* the existence of a property interest.

■ Here plaintiffs could have obtained judicial review of the denial of the permit in the State courts. Article 78 of the CPLR affords a summary proceeding by which one aggrieved by administrative action may obtain the relief previously available by the common law writs of certiorari, mandamus and prohibition and raise questions as to the legality of the administrative action. N.Y.CPLR § 7803 (McKinney 1994). Among the issues that may be raised is "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion . . ." *Id.* § 7803, subd. 3. A stay of the administrative action sought to be reviewed is available, albeit as a matter of discretion rather than of right. *Id.* § 7805. Bearing in mind that there is no requirement of exhaustion of state remedies under Section 1983,[4] the significance of the existence of the Article 78 remedy remains to be determined.

As noted previously, the *Parratt–Hudson* line of cases holds that the existence of an adequate state remedy precludes a procedural due process claim where the state post-deprivation procedure is all the process that is due. Moreover, the Second Circuit held in 1988 that the existence of New York's Article 78 proceeding precluded resort to Section 1983 in a case limited to a procedural due process claim, *simpliciter*, even where the plaintiff had failed to bring a timely state proceeding. *Campo v. New York City Employees' Retirement System*, 843 F.2d 96 (2d Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988). In 1990, however-

er, the Supreme Court held in *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), that:

"the existence of state remedies will not preclude procedural due process claims where (1) the risk of the deprivation complained of was foreseeable to the State, (2) the State might have reduced that risk either through additional predeprivation safeguards or by limiting the defendants' discretion in implementing established procedures, and (3) the defendants are authorized by the State to implement the requisite safeguards." *C.A.U.T.I.O.N., Ltd. v. City of New York*, 898 F.Supp. 1065, 1071 (S.D.N.Y.1995).

It is not clear whether *Zinermon* is satisfied here. The risk of an arbitrary deprivation might be reduced, either through additional predeprivation safeguards such as a hearing concerning the reason for the non-renewal or through establishing more definite and objective criteria for renewal. The defendants certainly are authorized to implement added safeguards. The harder question is whether the risk of the allegedly arbitrary deprivation was foreseeable as opposed to a random and unauthorized act. But this need not be determined. Even a conclusion that plaintiffs come within *Zinermon* would not warrant a conclusion that plaintiffs may prevail. The question whether plaintiff received all the process they were due would remain.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court emphasized that due process is not a monolithic concept; its dictates vary with the circumstances:

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the

---

4. *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982) (state administrative remedies); *Steffel v. Thomp-son*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222–23, 39 L.Ed.2d 505 (1974) (state judicial remedies).

function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at 903.

While *Mathews* has been criticized,[5] such considerations have led the Court to hold, depending upon the specific interests at stake, that pre-deprivation hearings are not invariably required. *See, e.g., Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (administration of corporal punishment in public school); *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (*ex parte* prejudgment garnishment); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (dismissal of civil service employees); *cf. Mathews,* 424 U.S. 319, 96 S.Ct. 893 (termination of disability benefits without evidentiary hearing).

■ In this case, the private interest at stake is the ability to dock the plaintiffs' boat in a particular marina, which is not of comparable weight to the interests at issue in cases in which the Court has found pre-deprivation hearings constitutionally required. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (employment discharge); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (child custody); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's license suspension). The risk of erroneous deprivation absent hearings prior to permit decisions seems modest. Moreover, in this case, the plaintiffs were provided informal process in the form of extensive correspondence between their attorney and Elizabeth Okin of the Corporation Counsel's office, negotiations conducted on their behalf with Riverside Park Administrator McKinney, and a meeting with Mr. Pomposello, Manhattan Borough Commissioner of Parks.[6] (Irwin Aff. ¶¶ 24–61) Finally, the depriva-

tion complained of by plaintiffs in this case is eminently subject to correction through Article 78 proceedings. *See Barry v. Barchi,* 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979) (*ex parte* license suspension permissible if agency provided "prompt" post-suspension hearing); *Woods v. Federal Home Loan Bank Board,* 826 F.2d 1400, 1411 (5th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988) (adequacy of pre-deprivation procedures examined in light of available post-deprivation procedures).

The public and other occupants of the boat basin have substantial interests in ensuring that the boat basin and the vessels docked there are safe and, indeed, something less than an eyesore. The burden on the public fisc and administrative resources inherent in requiring a hearing prior to the denial of a dockage permit seems excessive given the interest at stake. In consequence, this Court holds that the informal reviews that occurred, coupled with the availability of review under Article 78 of a denial of a dockage permit, fully satisfied the obligation of the City and State to afford plaintiffs procedural due process. *See Goss,* 419 U.S. at 581–84, 95 S.Ct. at 740–41; *Signet Construction Corp. v. Borg,* 775 F.2d 486, 491–92 (2d Cir. 1985); *cf. Strong v. Bd. of Educ. of Uniondale Free Sch. Dist.,* 902 F.2d 208, 212 (2d Cir.), *cert. denied,* 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 208 (1990).

*Substantive Due Process*

■ Plaintiffs claim also that defendants' breach of contract violated their substantive due process rights. Substantive due process protects those rights that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington,* 31 F.3d 1191, 1196 (2d Cir.1994) (quoting *Reno v. Flores,* 507 U.S. 292, ——,

---

5. *E.g.,* II Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 9.5 (3d ed. 1994).

6. In some cases of government action depriving an individual of liberty or property, notice, an explanation of the government's position, and an "informal give and take" in which the individual

subject to the government's action is given the opportunity to present his or her side of the story, is all that the Due Process Clause requires. *See Goss v. Lopez,* 419 U.S. 565, 581–84, 95 S.Ct. 729, 740–42, 42 L.Ed.2d 725 (1975) (informal process is sufficient for suspension of a public school student for disciplinary reasons).

113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993)) (citations omitted). Put another way, it "protects only those interests that are 'implicit in the concept of ordered liberty.'" *Id.* Substantive due process extends also to "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (citations omitted). Traditionally, the types of interests recognized under substantive due process include rights of privacy, family and procreation—those rights that are so central to an individual's freedom that "neither liberty nor justice would exist if [they] were sacrificed." *Bowers v. Hardwick,* 478 U.S. 186, 191–92, 106 S.Ct. 2841, 2844–45, 92 L.Ed.2d 140 (1986) (citation omitted); *see also Harrah Indep. Sch. Dist. v. Martin,* 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979) (collecting cases discussing interests traditionally accorded substantive due process protection).

Applying the foregoing substantive due process principles in the context of a state labor contract, the Second Circuit recently wrote that "simple state-law contractual rights, without more, are [not] worthy of substantive due process protection." *Local 342,* 31 F.3d at 1196; *accord, S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966–69 & n. 4 (2d Cir.1988). Defendants would have us read this decision as holding that a breach of contract by a State actor never implicates property interests that support a constitutional claim. The Court declines to read *Local 342* so broadly. *Local 342* involved a dispute over a collective bargaining agreement governed by a New York law which proscribed unilateral alteration of the terms of the agreement. The union alleged that the Town Board's unilateral termination of an insurance trust as the health benefits provider for its employees deprived union members of a legitimate claim of entitlement to payments by the Town to the trust and therefore violated their substantive due process rights. The Second Circuit held that this contract right should not be afforded substantive due process protection because the nature of the right at issue was not sufficiently important. Other courts also

have held that substantive due process does not protect "run-of-the-mill contractually-based property interest[s]." *Compare Charles v. Baesler,* 910 F.2d 1349, 1351 (6th Cir.1990) (contractual right to promotion with Fire Department does not rise to constitutional level); *United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 35 (6th Cir.1992) (per curiam) (rights under contract to provide insurance to municipal employees are not fundamental and therefore not accorded substantive due process protection); *Reich v. Beharry,* 883 F.2d 239, 244–45 (3d Cir.1989) (same for county's contract to pay fees of special prosecutor); *with Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 222–24, 106 S.Ct. 507, 511–13, 88 L.Ed.2d 523 (1985) (assuming, without deciding, that substantive due process protection protects some state-created contract rights); *Moore v. Warwick Pub. Sch. Dist. No. 29,* 794 F.2d 322, 329–30 (8th Cir.1986) (arbitrary and capricious dismissal of school superintendent warrants substantive due process protection); *Gargiul v. Tompkins,* 704 F.2d 661, 668–69 (2d Cir.1983) (same for dismissal of tenured schoolteacher), *vacated on other grounds,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984).

On the other hand, there undoubtedly are circumstances in which a breach of contract by a state actor would raise substantive due process concerns. While "simple state-law contractual rights, without more," do not do so, the question in each case is whether the breach affects interests sufficiently grave to trigger due process scrutiny. The Court must look to the effect of the breach on the claimant and determine whether the effect is so dramatic and the rights implicated so fundamental that the Constitution provides a remedy. For example, the unilateral revocation of leases in public housing, although certainly a breach of contract, could threaten to deprive needy residents of roofs over their heads in circumstances in which their financial situations would not permit them to find shelter in the private market and, in consequence, become an appropriate focus of substantive due process concern. *See S & D Maintenance Co.,* 844 F.2d at 966 n. 4; *cf. Escalera v. New York*

*City Housing Auth.*, 425 F.2d 853, 861 (2d Cir.) (protectable property interest in leases for public housing), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *United States v. Leasehold Interest in 121 Nostrand Ave.*, 760 F.Supp. 1015, 1027 (E.D.N.Y. 1991) (same).

■ The interests affected by the alleged contracts in this case are not trivial. Plaintiffs have resided in the 79th Street Boat Basin for a number of years. Their interest in remaining in the Boat Basin community therefore bears some similarity to the interest of one living in a permanent home to remaining in that home. But the analogy is imperfect, and other factors also warrant consideration.

For one thing, plaintiffs' houseboat, their residence, is movable and therefore by its very nature differs in material degree from the houses and apartments that others call "home." To require plaintiffs and their houseboat to leave the Boat Basin therefore involves a less substantial interference with their right to remain in their chosen "home" than would a governmental action requiring one to leave a fixed place of abode. Unlike a house or an apartment, part of what plaintiffs call "home" can go with them.

More important, plaintiffs' justifiable expectations of permanence are limited. First, the 1989–90 dockage permit put plaintiffs on notice that they were licensees and that they might lose their dockage privileges if they made unauthorized modifications to the boat or if they violated other provisions of the license. Second, the dockage permits issued by the Department of Parks expired annually, thus creating a known and accepted periodic risk of non-renewal. Third, although the language of the permits is less than clear, they do contain the statement that they were terminable by the Commissioner of Parks, further undermining the justification for any expectation of permanence.

The Supreme Court has cautioned against expansion of the substantive component of the Due Process Clause. *See, e.g., Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). To the extent that substantive due process protection exists, it must be confined to the protection of interests central to individual freedom and autonomy. *Supra*, p. 450. Without minimizing the significance of the plaintiffs' interests, the Court concludes that those interests simply are not sufficiently weighty to warrant their protection under the substantive due process rubric.

*Other Issues*

Two issues remain.

■ First, at oral argument, plaintiffs advanced the theory that their substantive due process rights were violated because the permit was denied in retaliation for their exercise of free speech. They suggested, on the basis of the deposition of Vincent Paul, that Chris Williamson, the former president of the HHPA, deliberately excluded plaintiffs from the "rent strike" settlement agreement he reached with Riverside Park Administrator McKinney. Mr. Williamson allegedly was motivated to do this by disagreements he had had with plaintiffs regarding internal HHPA and community matters.

This argument, of course, is directly at odds with plaintiffs' claim that the Parks Department–HHPA agreement entitled them to a new permit. But even putting aside this inconsistency, the argument—which was neither raised in the complaint nor briefed—is of no avail. Even on plaintiffs' theory, Mr. Williamson was acting only for the private HHPA, and there is no claim or evidence that Mr. McKinney knew of Mr. Williamson's motivation. Thus, even assuming a retaliatory motive on Mr. Williamson's part, there is no evidence that the City sought to abridge the plaintiffs' due process rights in retaliation for their exercise of free speech.

■ The complaint contains also a claim under the Equal Protection Clause. Plaintiffs, however, appear to have abandoned it. They have advanced no argument and offered no evidence in its support. Accordingly, it will be dismissed.

*Conclusion*

For the foregoing reasons, there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law on all of the federal claims.

Defendants' motion for summary judgment dismissing the complaint therefore is granted. In light of the Court's disposition of all matters over which it has an independent basis of jurisdiction, plaintiffs' state law claims and defendant's counterclaim for outstanding dockage fees are dismissed. 28 U.S.C. § 1367(c)(3) (1986).

SO ORDERED.