**MONTAUK BUS COMPANY, INC., Plaintiff,**

v.

**UTICA CITY SCHOOL DISTRICT; Board of Education of Utica City School District; Birnie Bus Service, Inc.; Central New York Coach Sales & Service, Inc., Defendants.**

**Utica City School District; Board of Education of Utica City School District, Counter-Claimants,**

v.

**Montauk Bus Company, Inc., Counter-Defendant.**

**Civil Action No. 96CV1706(RSP/GJD).**

United States District Court, N.D. New York.

Nov. 24, 1998.

314

MacKenzie Smith Lewis Michell & Hughes, LLP, Syracuse, NY (Peter D. Carmen, of counsel), for Plaintiff-Counter-Defendant.

Gorman, Waszkiewicz, Gorman and Schmitt, Utica, NY (Bartle J. Gorman, Darryl B. Rahn, of counsel), for Defendant Birnie Bus Service, Inc.

Menter, Rudin and Trivelpiece, P.C., Syracuse, NY (Thomas J. Fucillo, Mitchell J. Katz, of counsel), for Defendant Central New York Coach Sales and Service, Inc.

Donald R. Gerace, Utica, NY, for Defendants-Counter-Claimants Utica City School Dist. and Board of Educ. of Utica City School Dist.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.*

### INTRODUCTION

Montauk Bus Company, Inc. ("Montauk"), brought this lawsuit pursuant to 42 U.S.C. § 1983 and New York state law, following the termination of its bus contract with the Utica City School District ("School District"). The School District and Board of Education of the Utica City School District ("Board of Education") moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Central New York Coach Sales & Service, Inc. ("CNY Coach") moved for summary judgment·or 12(b)(6) dismissal of the second, third, and fifth causes of action. Birnie Bus Service, Inc. ("Birnie Bus") moved for Rule 12(b)(1) dismissal. I grant defendants' motions to dismiss Montauk's federal claims for failure to state a claim upon which relief can be granted and dismiss the state law claims for lack of subject matter jurisdiction.

### BACKGROUND

In 1994, Montauk, a Long Island company, attempted to expand its business by bidding on bus transportation contracts in the Central New York area. Am. Compl., Dkt. No. 13, ¶ 11. In April 1996, the School District solicited bids and distributed bid specifications for a contract to transport its students to school in the morning and home in the afternoon during the 1996–1997 school year (the "AM/PM contract"). Id. ¶¶ 12–14. On April 12, 1996, Montauk submitted the lowest of several bids to perform the AM/PM contract. Id. ¶¶ 17, 18, 20. Montauk claims that all of the other bidders, including second-lowest bidder Birnie Bus Service, Inc. ("Birnie"), were based in or had substantial business relationships in Central New York. Id. ¶¶ 19, 21.

Because Montauk was a responsible bidder and submitted the lowest bid, the School District accepted plaintiff's bid. However, Montauk claims that defendants "disapproved" of plaintiff receiving the contract because Montauk was not a Central New York company. Am. Compl. ¶ 23. Montauk contends that, as part of a scheme among defendants to prevent plaintiff from receiving the AM/PM contract, the School District rejected all bids on the pretext that it wished to change bid specifications,[1] and the district solicited new bids on April 24, 1996. Id. ¶¶ 24–27. On May 3, 1996, plaintiff again submitted the lowest bid for the AM/PM contract. Id. ¶¶ 28, 30. Birnie again submitted the second lowest bid. Id. ¶ 31. The School District awarded the AM/PM contract to plaintiff on May 8, 1996. Id. ¶ 33. Plaintiff posted a 100 percent performance bond, as·the contract required, to ensure that Montauk would faithfully perform all of its AM/PM contract obligations. Am. Compl. ¶ 35.

Montauk alleges in conclusory fashion that defendants engaged in conduct designed to prevent Montauk from performing the contract. See id. ¶¶ 37 (defendants "embarked upon a scheme to create conditions and circumstances that would render Plaintiff's performance of the contract impossible or impracticable"), 38 (CNY Coach "engaged in a campaign and in conduct designed to prevent Plaintiff from conducting business in Central New York"), 39 (the School District "imposed new, additional requirements upon Plaintiff that were not ... [in] the contract"), 40 (the School District "imposed regulations, rules, decrees, policies and procedures which impaired its obligations, and the obligations of Plaintiff, under the AM/PM Contract"), 41

---

* Rosemary S. Pooler, United States Court of Appeals Judge for the Second Circuit sitting by designation as a United States District Court Judge for the Northern District of New York.

1. Montauk claims that the School District's actual purpose in rejecting the bids was to allow a local company to submit a new lower bid to win the contract. Am. Compl. ¶ 24.

(the school district imposed new requirements "in furtherance of its scheme to discredit and defame Plaintiff, and to create circumstances and conditions that would render Plaintiff's performance ... impossible or impracticable"). Montauk also claims that the School District breached the contract by failing to provide certain information and materials necessary to plaintiff's performance, failing to perform conditions precedent to plaintiff's performance, and then wrongfully declaring plaintiff to be in default. Am. Compl. ¶¶ 44–45.

Montauk alleges that defendants spread false rumors in an attempt to discredit plaintiff. Am. Compl. ¶ 46. Montauk claims that in May, June or July 1996, Birnie contacted plaintiff's bus supplier and falsely represented that Montauk would not be able to fulfill its obligations under the AM/PM contract and that Birnie would be performing those duties. Id. ¶ 47. Montauk also alleges that in July or August 1996, the School District contacted plaintiff's performance bond underwriter and falsely represented that Montauk was not performing its obligations under the contract and likely would not perform its future obligations. Id. ¶ 49. Montauk contends that it fulfilled all its obligations under the contract except where the School District's conduct prevented it from doing so. Id. ¶ 51.

On July 29, 1996, the School District publicly solicited bids from other companies to perform the same services covered by Montauk's AM/PM contract. Am. Compl. ¶ 52. Some time after August 2, 1996, the School District awarded a contingency contract to Birnie to perform the services for the AM/PM contract in the event Montauk did not perform. Id. ¶ 54. As a result of the solicitation of bids and award of the contingency contract, Montauk was unable to obtain financing to pay for a sufficient number of buses to perform the AM/PM contract. Id. ¶¶ 53, 55. In August 1996, the School District declared Montauk in default and terminated its AM/PM contract. Id. ¶¶ 57.

Montauk filed a complaint on October 28, 1998. Compl., Dkt. No. 1. On March 17, 1997, after the defendants answered the complaint, Magistrate Judge Gustave J. Di Bianco granted plaintiff leave to file an amended complaint asserting additional causes of action for defamation. Dkt. No. 12. Plaintiff filed its amended complaint on March 25, 1997. Am. Compl., Dkt. No. 13.

Montauk asserts six causes of action in its amended complaint. First, plaintiff alleges that the School District breached its contract with Montauk by imposing conditions that rendered performance impossible in violation of state contract law. Am. Compl. ¶ 61–63. Second, Montauk alleges that the School District and School Board violated plaintiff's rights under the Contract Clause, Article I Section 10, of the United States Constitution by imposing regulations, rules, decrees, policies, and procedures that impaired plaintiff's contractual obligations. Id. ¶¶ 66–68. Third, plaintiff alleges that the School District deprived plaintiff of a constitutionally protected property interest in continued performance of and payment for services under the AM/PM contract for the period September 1996 through June 1998 without due process of law in violation of the Fourteenth Amendment. Id. ¶¶ 70–74. Fourth, plaintiff alleges that Birnie Bus intentionally interfered with Montauk's contract with the School District by spreading false rumors and acting in concert with CNY Coach to render plaintiff unable to perform, in violation of state tort law. Id. ¶¶ 76–81. Fifth, plaintiff alleges that CNY Coach violated state law and intentionally interfered with Montauk's contract with the School District by (1) unlawfully repossessing buses it had sold to Montauk; (2) informing the School District that Montauk had buses lawfully repossessed in other districts; (3) falsely representing to the School District that plaintiff was not dependable, solvent, or capable of performing services; (4) informing the School District that it would provide the necessary buses to Birnie Bus but not to Montauk to perform the AM/PM contract; and (5) supplying the buses for the AM/PM contract to Birnie Bus. Id. ¶¶ 83–95. Sixth, plaintiff alleges that the School District made false statements that Montauk breached and defaulted on its contract, in violation of state law. Id. ¶¶ 97–101.

Defendants School District and Board of Education filed an amended answer on

March 28, 1997, and asserted one counterclaim alleging that Montauk falsely induced the School District to enter into the AM/PM contract and then breached that contract in violation of state law. Am. Answer, Dkt. No. 14, ¶¶ 21–30. Defendants CNY Coach and Birnie Bus filed amended answers on March 31, 1997, and April 15, 1997, respectively. Dkt. Nos. 15–16. Plaintiff filed a reply to the counterclaim on April 22, 1997. Dkt. No. 17.

By letter filed on July 16, 1997, plaintiff's counsel informed the court that plaintiff had filed for bankruptcy under Chapter 11 of the Bankruptcy Code, resulting in a stay in the present lawsuit. Dkt. No. 24. On July 21, 1997, I ordered that this case be removed from the open docket until the stay was lifted. Dkt. No. 25. By letter filed on December 24, 1997, plaintiff's counsel advised the court that the bankruptcy court had lifted the stay, and he requested that the present case be restored to the active docket. Dkt. No. 26.

On March 11, 1998, defendants filed the present motions to dismiss, Dkt. Nos. 28, 30, 34, and for summary judgment, Dkt. No. 30. Plaintiff opposed the motions. Dkt. Nos. 37–39. None of the defendants submitted reply papers, and I heard oral argument on May 4, 1998.

## DISCUSSION

I address only the dispositive issues involving the federal claims. It is not clear that suits for violations of the Contract Clause may be brought under Section 1983. *Haley v. Pataki*, 106 F.3d 478, 482 n. 2 (2d Cir. 1997). However, the parties have not raised this issue and I do not decide it.

## I. Subject Matter Jurisdiction

The School District and the Board of Education primarily moved for dismissal pursuant to Rule 12(b)(1). Defendants argue that because breach of contract does not violate the Contracts or Due Process clauses of the constitution, plaintiff's allegations are the basis for neither a claim nor subject matter jurisdiction. Gerace Aff., Dkt. No. 28, ¶¶ 21, 24. In addition, defendants claim that the Eleventh Amendment bars plaintiff's claims because New York State provides 79 percent of funding for School District transportation. *Id.* ¶¶ 25.

## A. Eleventh Amendment Immunity

Defendants argue that the state is the real party in interest because (1) the contract with Montauk required state approval; (2) the state funded 79 percent of the contract; and (3) the contract was conditioned on the receipt of state monies. Defs.' Mem., Dkt. No. 29, at 17. This position lacks merit, and defendants cite no authority to support it.

■ When state governments create entities that operate as alter egos or instrumentalities of the state, the arm-of-the-state doctrine provides them with sovereign immunity. *TM Park Ave. Assoc. v. Pataki*, 986 F.Supp. 96, 104 (N.D.N.Y.1997) (McAvoy, C.J.). Political subdivisions such as counties and cities do not receive Eleventh Amendment immunity from suit because they are autonomous from the state. *Id.* The court considers six factors in determining whether an entity is an arm of the state: "(1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how it is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state." *Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 293 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 481, 136 L.Ed.2d 375 (1996). If these six factors "point in different directions", then the court must ask whether allowing the suit will threaten the integrity of the state or expose the state treasury to risk. *Id.* If all of the factors are evenly balanced, the controlling factor is the vulnerability of the state's purse. *Id.* (citing *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 51, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)).

■ In the present case, defendants arguably address one of the six initial factors— how the entity is funded. They make no effort to address the other five factors. Moreover, defendants' assertions regarding funding apply only to the contract at issue,

**318**

not to the entity as a whole. Importantly, defendants nowhere allege that this suit would put the state's integrity or treasury at risk. Consequently, I find that the School District and Board of Education are not entitled to Eleventh Amendment immunity.

## B. Failure to Allege a Due Process Claim

■ Defendants next argue that plaintiff's complaint is so devoid of merit that it fails to invoke this court's subject matter jurisdiction. However, this is not a proper basis for Rule 12(b)(1) dismissal.

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. In contrast, a dismissal under Rule 12(b)(6) is a dismissal on the merits of the action—a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted. While distinguishing between a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and a dismissal for failure to state a claim under Rule 12(b)(6) appears straightforward in theory, it is often much more difficult in practice. This is particularly so in cases involving federal question jurisdiction under 28 U.S.C. § 1331, which provides district courts with "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." In federal question cases, the very statute that creates the cause of action often confers jurisdiction as well—that is, the claim "arises under" the same federal law that gives the plaintiff a cause of action. *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996). With these principles in mind, the Second Circuit has held that "where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution." *Id.* at 1189. If so, then the court should assume that subject matter jurisdiction exists and then later examine the com-

plaint on its merits. *Id.* The court only may dismiss for lack of subject matter jurisdiction when the federal claim asserted on the face of the complaint "is so plainly insubstantial as to be devoid of any merits and thus [does] not present[ ] any issue worthy of adjudication." *Id.* (quoting *Giulini v. Blessing,* 654 F.2d 189, 192 (2d Cir.1981)).

■ In the present case, the amended complaint clearly asserts two federal causes of action. Montauk's second cause of action alleges that defendants School District and Board of Education impaired plaintiff's obligations under the AM/PM contract in violation of Article I Section 10 of the Constitution. Am. Compl., Dkt. No. 13, ¶¶ 66–68. The third cause of action asserts that the School District deprived plaintiff of a property interest in the contract without due process of law and acted in a manner that was arbitrary and capricious and without a legitimate government purpose. *Id.* ¶¶ 70–74. These allegations are facially sufficient to invoke the court's subject matter jurisdiction and are not so plainly insubstantial that they are devoid of any merit or fail to present an issue worthy of adjudication. Consequently, the complaint may not be dismissed pursuant to Rule 12(b)(1).

## II. Failure to state a claim

The amended complaint arguably asserts three federal claims, which I consider separately. The second cause of action, as noted, contains the Contracts Clause claim. The third cause of action seems to combine notions of procedural and substantive due process. However, in its opposition papers, Montauk states that it makes no procedural due process claim and instead alleges only a deprivation of substantive due process. Pl.'s Mem., Dkt. No. 39, at 17. I therefore dismiss the procedural due process claim to the extent that the amended complaint attempts to allege it.

### A. Contract Clause

Montauk alleges that "[t]he School District ... imposed regulations, rules, decrees, policies, and procedures which impaired its obligations, and the obligations of Plaintiff under the AM/PM Contract." Am. Compl., Dkt.

No. 13, ¶ 67. Defendants argue that plaintiff's allegations do not state a claim under the Contracts Clause because plaintiff fails to point to any legislative act that impaired a contractual obligation. I agree.

■ "States violate the Contract Clause when legislative action interferes with existing contractual relations." *Kinney v. Connecticut Judicial Dep't,* 974 F.2d 313, 314 (2d Cir.1992) *(per curiam)* (citing *Ogden v. Saunders,* 25 U.S. (12 Wheat.) 212, 265–68, 6 L.Ed. 605 (1827)). "In order to come within the provision of the constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state." *New Orleans Water–Works Co. v. Louisiana Sugar Ref. Co.,* 125 U.S. 18, 30, 8 S.Ct. 741, 31 L.Ed. 607 (1888). The "prohibition is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." *Kinney,* 974 F.2d at 314 (citing *New Orleans Water–Works,* 125 U.S. at 30, 8 S.Ct. 741). Any enactment, such as a by-law or ordinance of a municipal corporation, to which a state gives the force of law, is a statute of the state within the meaning of the Contract Clause. *New Orleans Water–Works,* 125 U.S. at 31, 8 S.Ct. 741.

In the present case, the complaint lacks any reference to legislative action that impaired the obligations of either party under the AM/PM Contract. Instead, the complaint describes numerous individual acts, none of which constitutes legislative action or has the force of law within the meaning of the Contracts Clause. Plaintiff claims that defendants (1) rejected the initial bids and solicited new bids for the AM/PM Contract; (2) imposed new, additional requirements upon plaintiff that were not included in the contract and were without legal statutory or contractual basis; (3) imposed regulations, rules, decrees, policies and procedures that prevented plaintiff from performing the contract; (4) failed to provide information and materials or perform obligations required under the contract; (5) falsely informed plain-

tiff's bonding company that plaintiff was not performing its obligations under the contract; (6) publicly solicited new bids for the same contract plaintiff held; (7) awarded a contingency contract to Birnie Bus; and (8) refused to perform or allow plaintiff to perform under its contract. Am. Compl., Dkt. No. 13, ¶¶ 25, 39–40, 43–45, 49–52, 54, 57–58.

■ None of the above actions constitutes legislative actions that carry the force of law. Rejecting bids, failing to provide information and materials or perform contractual obligations, falsely informing plaintiff's bonding company of nonperformance, re-bidding the contract, awarding the contingency contract, and refusing to allow plaintiff to perform all are administrative acts that do not implicate the Contract Clause. *See Kinney,* 974 F.2d at 314. *See also New Orleans Water–Works,* 125 U.S. at 32, 8 S.Ct. 741. The remaining claims, that defendants imposed additional requirements and procedures that were not part of the contract, also do not constitute legislative acts. Montauk's claim that these acts were legislative, or had the force of law, is directly contradicted by plaintiff's assertions that the Board of Education acted without legal justification or authority in imposing these additional requirements. *See* Am. Compl., Dkt. No. 13, ¶ 43; Pl.'s Mem., Dkt. No. 39, at 5.

. Plaintiff claims that the affidavit of David F. Bruno, the clerk of the Board of Education and the School District, demonstrates legislative acts because it lists Board of Education votes to reject bids, to award the contract, and to award the contingency contract, and calls them "legislative actions". *See* Bruno Aff., Dkt. No. 28, ¶ 3. I disagree. Preliminarily, I do not consider materials outside the complaint in deciding a motion pursuant to Rule 12(b)(6). Moreover, the construction of these acts by defendant's clerk does not control my determination. I find that the acts to which plaintiff points do not constitute legislative acts for Contract Clause purposes.

Finally, plaintiff claims that an issue of fact exists regarding the nature of the Board of Education's acts. However, the essence of a claim under the Contract Clause is that a legislative action interfered with plaintiff's

contractual relations. If plaintiff points to no legislative action but merely claims that his contract was impaired, he fails to state a claim under the Contract Clause. *See New Orleans Water–Works,* 125 U.S. at 30, 8 S.Ct. 741.

Even if I construed the acts of the Board of Education as legislative, they did not impair contractual obligations of plaintiff or the School District. As Judge Posner so clearly noted in a recent Seventh Circuit opinion, "the obligation created by a contract is an obligation to perform or pay damages for nonperformance, and if the second alternative remains, then, since it is an alternative, the obligation created by the contract is not impaired." *Horwitz–Matthews, Inc. v. City of Chicago,* 78 F.3d 1248, 1251 (7th Cir.1996) (quoting Oliver Wendell Holmes, "The Path of the Law," 10 Harv.L.Rev. 457, 462 (1897)). Plaintiff's arguments based on *United States Trust Co. of N.Y. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) and *Association of Surrogates and Supreme Court Reporters v. State of New York,* 940 F.2d 766 (2d Cir.1991) do not compel a different result. Although plaintiff correctly notes that those cases provide for heightened scrutiny of legislation that impairs a contractual right by relieving a public body of its own obligations, that scrutiny is not triggered until the court first finds that an impairment exists. *See United States Trust,* 431 U.S. at 17, 97 S.Ct. 1505; *Association of Surrogates,* 940 F.2d at 771 (finding an impairment of contract is threshold step toward resolving question of whether impairment violated constitution). Because plaintiff has not alleged the unavailability of damages or any other impairment of its contractual rights, defendants also are entitled to dismissal on these grounds. I need not reach the question of whether the alleged impairment is a minimal one permitted by the Constitution. Plaintiff's argument that it is entitled to discovery prior to dismissal is unavailing.

### B. Substantive Due Process

Plaintiff argues that it held a constitutionally protected property interest in providing transportation services. Pl.'s Mem., Dkt No. 39, at 13. Plaintiff relies upon New York Education Law § 2513, which provides:

> The board of education shall let all contracts for public work and all purchase contracts to the lowest responsible bidder after advertisement for bids where so required by section one hundred three of the general municipal law.

N.Y.Educ.Law § 2513 (McKinney 1998). Plaintiff's argument is inapposite to the inquiry here. Even assuming a property right existed in plaintiff's right to be awarded the contract, it does not follow that plaintiff had a protected property right in nontermination of the contract.

> In one sense, ... every enforceable contract right can be said to be an "entitlement." And whenever a person contracts with a state, breach by the state can be considered a denial of his entitlement to performance of the contract. If the concept of "entitlement" were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.

*Cf. S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir.1988) (examining procedural due process claim). The *Goldin* court found that the plaintiff failed to assert a protected property interest in nontermination of a government contract in the absence of a state law or contractual provision creating that right. *Id.* at 967. In the present case, plaintiff's complaint fails to assert facts from which the court could infer that plaintiff held a protected property interest in nontermination of the contract.

Moreover, Montauk's amended complaint does not allege deprivation of a sufficiently important interest because it asserts only contract-based deprivations. "It is well settled that, where the alleged right ... cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342 v. Town Bd. Of Town of Huntington,* 31 F.3d 1191, 1196 (2d Cir.1994) (internal quotation marks and citations omitted). "Substantive due process protects only those interests that are implicit in the concept of ordered liberty."

*Id.* In the present case, plaintiff contends that its substantive due process rights were violated when defendants failed to allow it to provide transportation under the AM/PM contract. However, the Second Circuit has held that "simple, state-law contractual rights, without more, ... are not the type of important interests that have heretofore been accorded the protection of substantive due process." *Id.* (internal quotation marks and citations omitted). "[R]outine state-created contractual rights are not deeply rooted in this Nation's history and tradition, and, although important, are not so vital that neither liberty nor justice would exist if [they] were sacrificed." *Id.* (internal quotation marks and citations omitted). Where no protectable property interest exists in a contract, it is obvious that termination of the contract violates no substantive due process rights. *Id.*

However, courts have recognized that "there undoubtedly are circumstances in which a breach of contract by a state actor would raise substantive due process concerns." *Irwin v. City of New York,* 902 F.Supp. 442, 450 (S.D.N.Y.1995). The question is "whether the breach affects interests sufficiently grave to trigger due process scrutiny. The Court must look to the effect of the breach on the claimant and determine whether the effect is so dramatic and the rights implicated so fundamental that the Constitution provides a remedy." *Id.* Cases in which breach of a contract involves substantive due process concerns might include unilateral revocation of leases in public housing, which could threaten to deprive residents of a roof over their heads. *Id.* at 450–51 (citing *Escalera v. New York City Hous. Auth.,* 425 F.2d 853, 861 (2d Cir.1970)).

In the present case, the interests that the AM/PM contract affects are important, but they do not rise to the level of those protected by substantive due process. By the very terms of the contract, plaintiff had no expectation of permanence because it was for transportation of students for two school years only. Thus, even if plaintiff had alleged a protected property interest in the contract, plaintiff's limited expectation of permanence weighs against affording it sub-stantive due process protection. In addition, the interest of a commercial vendor in performing a contract is not the type of weighty interest traditionally protected by notions of substantive due process. "To the extent that substantive due process protection exists, it must be confined to the protection of interest central to individual freedom and autonomy." *Id.* at 451. In light of these considerations, I find that Montauk failed to allege a violation of its substantive due process rights. Consequently, defendants' motion to dismiss the substantive due process claim for failure to state a claim is granted.

### III. State Law Claims

██ In light of my dismissal of all federal claims, I decline to exercise supplemental jurisdiction over either party's state law claims. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Consequently, each of the remaining claims and counter-claims is dismissed for lack of subject matter jurisdiction.

### CONCLUSION

For the reasons stated, I find that Montauk fails to state a federal claim upon which relief can be granted. Consequently, I dismiss plaintiff's second and third causes of action pursuant to Fed.R.Civ.P. 12(b)(6). Because no federal law claims remain, I dismiss Montauk's remaining causes of action alleging state law claims, and the state law counterclaims, for lack of subject matter jurisdiction.

IT IS SO ORDERED.