**MOODY HILL FARMS LIMITED PARTNERSHIP, Douglas Durst and Susanne Durst, Raymond McEnroe, Frank S. Perotti and Doris Perotti, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE, Defendant.**

**No. 95 CIV. 11001(RWS).**

United States District Court, S.D. New York.

Sept. 4, 1997.

As Amended Sept. 9, 1997.

Rosenberg & Estis, P.C., New York City, for Plaintiffs; Gary M. Rosenberg, Norman Flitt, Michael E. Lefkowitz, Todd E. Soloway, of counsel.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, for Defendant; Robert W. Sadowski, Assistant U.S. Attorney, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Moody Hill Farms Limited Partnership, Douglas Durst, Susanne Durst, Raymond McEnroe, Frank S. Perotti and Doris Perotti, ("Plaintiffs"), have brought this motion pursuant to Rule 56(b), Fed.R.Civ.P., for summary judgment regarding their action pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, (the "APA"), challenging the denial by the Keeper of the National Register of Historic Places (the "Keeper") of Plaintiffs' petition to remove the Hamlet of Coleman Station, ("Coleman Station"), from the National Register of Historic Places, ("National Register"). Defendant the National Park Service of the United States Department of the Interior, (the "NPS"), has also moved for summary judgment and, pursuant to Fed.R.Civ.P. 26(c), for denial of discovery.

For the reasons set forth below, the Moody Hill Plaintiffs' summary judgment motion is denied in part and granted in part, and the NPS' motion for summary judgment is denied.

### Parties

Moody Hill Farms Limited Partnership ("Moody Hill") operates a composting facility and organic farm at its principal place of business in Coleman Station, a hamlet in the Town of Northeast in Dutchess County, New York. The property on which Moody Hill operates is included within the Coleman Station Historic District.

Douglas and Susanne Durst are the owners of the property upon which Moody Hill operates. Douglas Durst ("Durst") is also a partner in Moody Hill. Raymond McEnroe ("McEnroe") owns a two hundred acre farm, of which twenty-one acres are included within the Coleman Station Historic District. McEnroe is a partner with Durst in Moody Hill (collectively "Moody Hill Plaintiffs"). Frank and Doris Perotti (the "Perottis") own a farm adjacent to the Coleman Station Historic District.

The NPS administers the National Register, which lists districts, sites, buildings, structures and objects of historical, architectural, archeological, cultural and engineering significance.

### Prior Proceedings

Plaintiffs filed the instant action on December 29, 1995, seeking judicial review of the Keeper's denial of its petition for removal or Coleman Station from the National Register. Plaintiffs allege that the denial was arbitrary and capricious because the Keeper failed to follow the regulatory requirements for designation of historic districts. In addition, Plaintiffs assert that notice of listing on the National Register was insufficient because the owners of property within the district were not notified until a year and a half after the listing took place, and the Perottis, who own property adjacent to the Coleman Station Historic District, were not notified of the listing at all. While no notice requirement exists under the National Historic Preservation Act ("NHPA"), Plaintiffs maintain that their right to timely, individual notification arises from the Due Process Clause of the Fifth Amendment.

On March 8, 1996, the Court ordered discovery to proceed. On May 3, 1996, the NPS moved simultaneously for summary judgment and for the denial of discovery. On August 20, 1996, the NPS' motions were denied.

On February 26, 1997, Plaintiffs filed this motion for summary judgment. The NPS also moved for summary judgment and oral argument was heard on May 7, 1997, at which time the motion was deemed fully submitted.

### Facts

Coleman Station is a hamlet in the Town of Northeast in Dutchess County, New York. In February 1993, several local residents submitted an application to the National Register and the State Register requesting nomination of Coleman Station as a Historic District. It may be fair to infer that the organic fertilizing employed by Moody Hill did not endear the farm to its neighbors. The New York State Office of Parks, Recreation and Historic Preservation, (the "NYHP"), sent notice to property owners within the district, notifying them of the nomination to the State and National Registers, as required by federal regulations. 36 C.F.R. § 60.6(c).[1] The Moody Hill Plaintiffs submitted objections regarding the nomination to the National and State Registers on the grounds that the area did not meet the necessary criteria.[2] In August 1993, the Deputy Commissioner of the NYHP approved Coleman Station for listing on the State Register without written opinion, and forwarded the nomination to the Keeper.

On October 25, 1993, seventy-four days after the approval of Coleman Station for listing on the State Register, property owners within Coleman Station received notice that Coleman Station had been listed on the State Register. The Moody Hill Plaintiffs then filed an Article 78 proceeding in Supreme Court, Dutchess County, challenging the listing as arbitrary and capricious on three grounds: (1) Coleman Station did not meet the criteria for such a listing as established by the New York State Parks, Recreation and Historic Preservation Law; (2) notice of determination of the listing did not provide notice within the time required by the New York Code of Rules and Regulations, 9 N.Y.C.R.R. § 427.5; and (3) the decision had been issued without a written finding in support as required by the regulations. *Id.* On June 29, 1994, the New York Supreme Court, Dutchess County, granted Moody Hill's Article 78 proceeding and annulled the determination which listed Coleman Station on the State Register. The court based its decision on the violation of state regulations requiring timely notice and a written finding. *In the Matter of the Application of Moody Hill Farms Limited Partnership v. New York State Office of Parks, Recreation and Historic Preservation,* Dutchess Cty. Clerk's

1.  Section 60.6(c) of 36 C.F.R. states in relevant part:
    As part of the nomination process, each State is required to notify in writing the property owner(s) ... of the State's intent to bring the nomination before the State Review Board.... The State shall send the written notification at least 30 but not more than 75 days before the State Review Board meeting.... The notice shall give the owner(s) at least 30 but not more than 75 days to submit written comments and concur in or object in writing to the nomination of such property.... The National Register nomination shall be on file with the State Historic Preservation Program during the comment period ... so that written comments regarding the nomination can be prepared.

2.  Criteria for National Register are set forth at 36 C.F.R. § 60.4, which states in relevant part:
    National Register criteria for evaluation. The quality of significance in American history, architecture ... and culture is present in districts, sites, buildings, structures and objects that possess integrity of location, design, setting, materials, workmanship, feeling, and association and
    (a) that are associated with events that have made a significant contribution to the broad patterns of our history; or
    (b) that are associated with the lives of persons significant in our past; or
    (c) that embody the distinctive characteristics of a type, period, or method of construction, or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction ...

    Criteria used to determine suitability for State and National Register listings are identical. *See* 9 N.Y.C.R.R. § 427.3.

Index No. 0324/94, June 29, 1994 (Beisner, J.).

On August 19, 1994, the Moody Hill Plaintiffs received notice that the NYHP was considering renomination of Coleman Station as a historical district for both the State and National Registers. Because the Moody Hill Plaintiffs had not yet received notice that the National Register listing had occurred, this letter reinforced their impression that their objections as to both listings would be considered. The Moody Hill Plaintiffs submitted written objections raising questions as to whether Coleman Station met the standards and criteria necessary for State or National Register listing.

Meanwhile, at the federal level, on August 31, 1993, the NPS published notice in the Federal Register that Coleman Station was being considered for entry on the National Register, as required by federal regulations. 36 C.F.R. § 60.6(a). On September 30, 1993, Coleman Station was listed on the National Register. Pursuant to federal regulations, notice of the listing was published in the Federal Register the same day and notice was sent to the NYHP, id. § 60.13(b), who was responsible for notifying property owners within the district. *Id.* § 60.6(u).[3] The NYHP did not notify property owners of the National Register listing until December 31, 1994, seventeen months later. No notice was provided for adjacent property owners. Federal regulations do not impose any time limit for the State Agency to provide notice of listing on the National Register, nor do the regulations require provision of notice to owners of contiguous property.

In mid-January 1995, the NYHP notified the Moody Hill Plaintiffs that it would con-

sider their objections only as to nomination to the State Register, but not as to the National Register. At a hearing on February 2, 1995, the Board decided not to renominate Coleman Station to the State Register.

On February 28, 1995, Plaintiffs submitted a petition to remove Coleman Station from the National Register, pursuant to 36 C.F.R. § 60.15,[4] on grounds that: (1) the property did not meet the National Register criteria for evaluation; (2) there was an error in professional judgment as to whether the property meets the criteria for evaluation; and (3) there was prejudicial procedural error in the listing process. In support of the first two grounds, Plaintiffs alleged that the boundaries of the Coleman Station Historic District were defective and that Coleman Station lacked the "historical integrity" required by 36 C.F.R. § 60.4(a). In support of their assertion of prejudicial procedural error, Plaintiffs alleged that the seventeen month delay in notice to property owners within the district and lack of notice to owners of adjacent property violated their procedural due process rights under the Fifth Amendment. The Plaintiffs also asserted that the National Register listing was voided by the New York State Supreme Court's annulment of the State Register listing and the NYHP's subsequent failure to renominate the district to the State Register.

Moody Hill's petition for removal was accompanied by a letter from the Deputy Commissioner for the NYHP, which stated that questions had been raised regarding the integrity of this district, and that an error in drawing the boundaries may have occurred.

---

3. Subsection 60.6(u) states in relevant part:
   State Historic Preservation Officers are required to inform the property owners and the chief elected local official when properties are listed in the National Register ... States which notify all property owners individually of entries in the National Register need not publish a general notice.

4. Section 60.15 states in relevant part:
   Removing properties from the National Register. (a) Grounds for removing properties from the National Register are as follows: (1) The property has ceased to meet the criteria for listing in the National Register because the qualities

which caused it to be originally listed have been lost or destroyed, or such qualities were lost subsequent to nomination and prior to listing; (2) Additional information shows that the property does not meet the National Register criteria for evaluation; (3) Error in professional judgment as to whether the property meets the criteria for evaluation; or (4)Prejudicial procedural error in the nomination or listing process. Properties removed from the National Register for procedural error shall be reconsidered for listing by the Keeper after correction of the error or errors ...

On August 18, 1995, the Keeper denied the petition for removal. Regarding the eligibility of the historic district, she found that the nomination materials established eligibility for listing according to the criteria set forth in the federal regulations. Regarding the possibility that errors may have occurred regarding the boundaries of the district, as mentioned in the Deputy Commissioner's cover letter, the Keeper first noted that the Deputy Commissioner had not provided further information or a State opinion on the matter, and held that "As the record stands, we find no basis for professional error in delineating the boundaries for the historic district." Regarding the Plaintiffs' due process argument, the Keeper stated:

> [W]e do not understand [the State Court determination] to conclude that the State listing violated due process rights. Rather the opinion expressly concludes that the State listing process was invalid only because the state failed to notify the property owners of the listing within the 45 days of the listing as required by 9 N.Y.C.R.R. 427.5(f)(1) and that the state failed to make an administrative finding as required by 9 N.Y.C.R.R. 427.5(d).

On December 29, 1995, the Moody Hill Plaintiffs and the Perottis filed this action seeking judicial review of the NPS' denial of the petition for removal. As an initial ground for reversal of the Keeper's decision, Plaintiffs again contend that their rights to procedural due process have been violated. They assert that listing Coleman Station on the National Register substantially affected their property right because the listing subjects their property to the strictures of the State Environmental Quality Review Act ("SEQRA"). Under SEQRA, an owner of property within or substantially contiguous to a National Historic Register district must submit an Environmental Impact Statement ("EIS") before taking any action on his or her property which involves approval or funding from a state or local agency. 6 N.Y.C.R.R. § 617.4(b)(9). According to Plaintiffs, imposition of SEQRA implicates their property interest, and therefore the delay in notice to property owners within the district and lack of required notice to adjoin-ing property owners violated their procedural due process rights.

Second, Plaintiffs allege that Coleman Station was improperly nominated and listed. Plaintiffs assert that the Keeper overlooked prejudicial procedural error in the nomination to the National Register which occurred when the State Register listing was voided, thereby voiding the State Agency determination that the district met listing criteria. According to the Plaintiffs, the State Agency determination is a necessary predicate to the National Register listing. Finally, Plaintiffs contend that the Keeper overlooked the fact that the district fails to meet the criteria for National Register listing.

### Discussion

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court is not expected to resolve disputed issues of fact, *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues which require a trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The court must view the evidence in the light most favorable to the non-moving party. *O'Brien v. National Gypsum Co.*, 944 F.2d 69, 72 (2d Cir.1991). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356.

### A. An Issue of Fact Exists as to Whether Plaintiffs' Property Interests are Implicated by Imposition of SEQRA

Plaintiffs claim that, independent of the procedures under the NHPA, timely and individual notification of listing on the National Register is required by the Due Process Clause. In order to assert a violation of procedural due process rights, Plaintiffs must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process."

*Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994); *Irwin v. City of New York,* 902 F.Supp. 442, 446–47 (S.D.N.Y.1995). Property rights are not subject to due process protection unless the plaintiff has "more than a unilateral expectation of it. The plaintiff must, instead, have a legitimate claim of entitlement." *Id.* at 447 (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). Because the property interest claimed here involves New York State regulation of land use, the existence and dimensions of the property interest should be determined by New York State Law.

■■■■ New York law uses an entitlement analysis to determine if the benefit claimed by a plaintiff constitutes a property interest. *Walz v. Town of Smithtown,* 46 F.3d 162, 167–68 (2d Cir.1995); *RRI Realty Corp. Inc. v. Village of Southampton,* 870 F.2d 911, 918 (2d Cir.1989). In applying the entitlement analysis test, the court must focus on the degree of official discretion exercised in granting or denying the claimed benefit. *RRI* 870 F.2d at 918. "The question can be particularly difficult in cases involving governmental regulation of the manner in which an owner may use his property." *Sullivan v. Town of Salem,* 805 F.2d 81, 84 (2d Cir.1986). Where the state agency retains full discretion to grant or deny the application, no property interest sufficient to invoke due

process considerations is established. "An entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit." *Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir.1994) (quoting *RRI,* 870 F.2d at 918).

Plaintiffs contend that protectible property rights are implicated by the listing in the National Register because such a listing subject any property within or adjacent to the historical district to the strictures of SEQRA, which was enacted in order to "incorporate the consideration of environmental factors into the existing planning, review and decision-making processes of state, regional and local government agencies at the earliest possible time." To that end, SEQRA directs agencies to require an EIS for "actions they directly undertake, fund or approve." 6 N.Y.C.R.R. § 617.1(k). SEQRA sets forth a list of actions which automatically require the preparation of an EIS. *Id.* § 617.4. This list of "Type I Actions" includes any physical change made on property within or adjacent to a historical district listed on the State or National Register. *Id.* at § 617.4(b)(9).[5] In relevant part, SEQRA defines "action" as:

(1) projects or physical activities, such as construction or other activities that may affect the environment by changing the use, appearance or condition of any natural resource or structure that: (i) are directly undertaken by an agency; or (ii) involve funding by an agency; or (iii) require one or more new or modified approvals from an agency or agencies . . .

*Id.,* § 617.2(b). SEQRA defines agency "approval" as "a discretionary decision by an agency to issue a permit, certificate, license, lease or other entitlement or otherwise authorize a proposed project or activity." In short, SEQRA affects actions to which some degree of agency discretion applies.[6]

---

5. Section 617.4(b)(9) states that an EIS is required for:

[A]ny Unlisted action (unless the action is designed for the preservation of the facility or site) occurring wholly or partially within, or substantially contiguous to any historic . . . site . . . that is listed on the National Register of Historic Places, or that has been proposed by the New York State Board on Historic Preser-

vation for a recommendation to the State Historic Preservation Officer for nomination for inclusion in the National Register, or that is listed on the State Register of Historic Places.

6. In addition to the SEQRA requirements, local regulations also require an EIS when property owns adjacent to or within a historical district build new structures or expand existing struc-

■ Because the requirements of SEQRA are explicitly limited to actions subject to the exercise of agency discretion, initial application of the New York entitlement analysis indicates that Plaintiffs do not hold a property interest in taking those actions free from SEQRA requirements. However, as discussed above, the Second Circuit has directed district courts to consider, not merely whether agency discretion exists, but the scope of that discretion:

> By [the entitlement analysis] standard we did not intend to remove from constitutional protection every application for a license or certificate that could, under any conceivable version of facts, be the subject of discretionary action; a theoretical possibility of discretionary action does not automatically classify an application for a license or certificate as a mere "unilateral hope or expectation." On the contrary, our standard was intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation that application would have been granted.

*Sullivan,* 805 F.2d at 85. Here, an issue of fact exists as to the scope of agency discretion regarding actions covered by SEQRA sufficient to defeat summary judgment for either party. Although by its terms, SEQRA only covers "discretionary" agency approval, the actual degree of discretion applied to the actions at stake for the Plaintiffs has not been addressed by the parties. As set forth above, where the scope of agency discretion is so limited that conferral of the benefit will almost automatically follow, the recipient retains a property interest in the benefit. *See Walz,* 46 F.3d at 168 (property interest exists in obtaining excavation permit because requirement for issue is merely a completed application); *Brady v. Town of Colchester,* 863 F.2d 205, 212–13 (2d Cir.1988) (property interest in obtaining building permit where

no requirements exist beyond application); *Sullivan,* 805 F.2d at 85 (if property complied with applicable state and municipal requirements, then "there was no element of discretion or judgment remaining for the building official to exercise" in determining whether to grant benefit requested); *Koncelik v. Town of East Hampton,* 781 F.Supp. 152, 156–57 (E.D.N.Y.1991) (property interest established in application for conforming subdivision where applicants had satisfied all statutory requirements).

■ Until it is determined whether the imposition of SEQRA implicates a property interest, it cannot be determined whether procedural due process has been satisfied. Determination of the adequacy of due process protection proceeds according to a balancing test, as set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Once the court has identified the private interest affected by official action, it must determine the degree of protection required in order to satisfy procedural due process by balancing "the risk of an erroneous deprivation through the procedures used, and the probable value of additional procedural safeguards" against "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional ... procedural requirement would entail." *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. The amount of procedural protection required must be determined depending on the facts of the particular case. "The nature of the property or liberty interest at stake and the legal issues determine the kind of hearing required." *Interboro Institute, Inc. v. Foley,* 985 F.2d 90, 93 (2d Cir.1993)[7]; *see also NLRB v. EDP Medical Computer Systems, Inc.,* 6 F.3d 951, 956 (2d Cir.1993) (citing *United States v. Monsanto,* 924 F.2d 1186, 1192 (2d Cir.1991) and *Connecticut v. Doehr,* 501 U.S. 1, 13, 111 S.Ct. 2105, 2113–14, 115 L.Ed.2d 1 (1991)). At a minimum, procedural due process requires notice and an opportunity to be heard prior to depriva-

tures by more than fifty percent. Town of Northeast Code, Chapter 50, Section 50–6.

7. *Historic Green Springs v. Bergland,* 497 F.Supp. 839 (E.D.Va.1980), on which Plaintiffs rely to establish a due process violation in the instant

case, is inapposite; in *Historic Green Springs,* the court found a violation of procedural due process because the Interior Department had not yet published *any* procedural rules or substantive criteria for qualification of a historic district.

222

tion of any property interest. *NLRB,* 6 F.3d at 956. That minimum has been met here as regards the Moody Hill Plaintiffs, who received notice of the nomination to the National Register in February and May 1993, and were given time to prepare objections which were forwarded to the NPS in August 1993. Whether this minimum meets the requirement of the specific case will depend on the as yet undetermined nature of the Plaintiffs' property interest.

The Perottis accurately assert that, as adjacent property owners, they received no notice or hearing, yet their property is identically affected by SEQRA. Whether the Perottis' due process rights were therefore violated again depends on whether a property interest is implicated by the imposition of SEQRA.[8]

### B. *The Keeper's Denial of Plaintiffs' Petition to Remove Coleman Station from the National Register was Arbitrary and Capricious*

A successful challenge to an agency's decision under the arbitrary and capricious standard must clearly demonstrate that the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem or offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."
*Soler v. G. & U. Inc.,* 833 F.2d 1104, 1107 (2d Cir.1987) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983)). In making this determination,

---

8. The Perottis' position differs from that of the Moody Hill Plaintiffs because the NPS itself took no action as to the Perottis' property; the imposition of SEQRA is entirely a result of State law. It is possible that, for the Perottis, suit against the NPS is inappropriate to address an injury imposed only by State law.

9. Individual citizens may not apply for nomination to the National Register independently unless there is no State historical preservation agency. *Id.*

10. Section 60.6(k) also states:

the court may not substitute its judgment for that of an agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *State of New York Dep't of Social Services,* 21 F.3d at 492. The "arbitrary and capricious" standard includes both procedural and substantive defects:

Procedurally, an agency's decision can be "arbitrary and capricious" if it was not the product of the requisite processes. That is, regardless of the merits of the actual decision, a Court can remand a decision to an agency for further consideration if the agency did not adequately consider all the viewpoints which it was required to consider. Substantively, the "arbitrary and capricious" standard requires the reviewing Court to reject the findings of the agency if they were not based on consideration of relevant factors, or if there was a clear error of judgment.

*U.S. v. Dist. Council of NYC & Vicinity of Carpenters,* 880 F.Supp. 1051, 1066 (S.D.N.Y. 1995) (citations omitted)(Haight, J.).

Before determining whether the Keeper's dismissal was arbitrary and capricious, it is necessary to examine the complex of regulations governing a nomination to the National Register. Properties are added to the National Register by the State Agency responsible for historic preservation. 36 C.F.R. § 60.1(b).[9] The State Agency officer, in this case the Commissioner of the NYHP, must determine that the nomination application is "in conformance with National Register criteria" before submitting the nomination package to the Keeper. *Id.* at § 60.6(k),[10] (o).[11] If this determination is reached without controversy, the State Officer signs "Block 12" to certify compliance with listing

---

All comments received by a State and notarized statements of objection to listing are submitted with a nomination.

11. Section 60.6(o) states:

The State Historic Preservation Officer signs block 12 of the nomination form if in his or her opinion the property meets the National Register criteria for evaluation. The State Historic Preservation Officer's signature in block 12 certifies that: (1) all procedural requirements have been met; (2) The nomination form is adequately documented; (3) The nomination form is technically and professionally correct

criteria. If the Officer and Board of the State Agency disagree as to whether the area meets National Register criteria, the nomination may be submitted by the Officer alone, or by request of the Board or the chief elected official. *Id.* at § 60.6(*l* ).[12] If the nomination has been so disputed, the Officer must sign a continuation sheet stating his/her opinion on the eligibility of the property. *Id.,* at § 60.6(p).[13] at § 60.6(p). In sum, a nomination to the National Register does not proceed unless either the State Agency officer or Board find that it meets federal criteria. If that finding is disputed, the State Officer must submit a written opinion on eligibility.

■■■■ In the instant case, the Assistant Commissioner of the NYHP listed the district on the State Register and forwarded the nomination to the National Register on the same day, certifying as to its eligibility by signing the application form. As a result of the State Court proceeding, the nomination to the State Register became void *ab initio.* Subsequently, the NYHP decided not to renominate the district for the State Register. Implicit in this decision is the determination that the district does not meet the criteria for the State Register. Because the criteria for State and National Registers are identical, eligibility for National Register is also refuted. Thus, the certification of eligibility to the National Register, which resulted from the original nomination of the district, appears to have been voided by the State Court annulment, and was not re-established thereafter.

As part of the petition to delist, the Deputy Commissioner of the NYHP submitted a letter expressing his views on removal of the district, as required by 36 C.F.R. § 60.15. The letter stated that the boundaries may be defective and questioned the historic integri-

ty of the district, the threshold requirement for National Register listing. This letter, in conjunction with the voiding of the NYHP's certification of eligibility, indicates that an error in professional judgment occurred as to eligibility. The Keeper failed to consider that possibility. Instead she suggested that "If the State believes an error has occurred and that nomination documentation should be revised to reflect a boundary alteration, it is incumbent upon the State to request such acts and to provide documentation supporting any change." The Keeper was apparently referring to 36 C.F.R. § 60.14, which governs alterations in district boundaries. However the Deputy Commissioner's letter had nothing to do with suggestions of alteration. It was submitted pursuant to § 60.15(e), an entirely different provision, which requires a written opinion regarding the removal of a listed district altogether. The Keeper should have considered the Deputy Commissioner's opinion regarding the lack of historical integrity as evidence of professional error, supporting delisting. Because she failed to do so, the Keeper's determination was "not based on consideration of relevant factors." *Dist. Council of Carpenters,* 880 F.Supp. at 1066.

### Conclusion

For the reasons set forth above, summary judgment is denied as to the sufficiency of due process. Summary judgment is granted as to the Plaintiffs' claim that the Keeper's denial of their petition to delist was arbitrary and capricious. That denial is reversed, and the case will be remanded upon resolution of the due process question.

It is so ordered.

---

and sufficient; (4) In the opinion of the State Historic Preservation Officer, the property meets the National Register criteria for evaluation.

12. Section 60.6(*1*) states in relevant part:

If the State Historic Preservation Officer and the State Review Board disagree on whether a property meets the National Register criteria for evaluation, the State Historic Preservation Officer, if he or she chooses, may submit the nomination with his or her opinion concerning

whether or not the property meets the criteria for evaluation and the opinion of the State Review Board to the Keeper of the National Register for the final decision on the listing of the property . . .

13. If the State Agency personnel agree that the nomination fails to meet the criteria for National Register and should not be forwarded, "[a]ny person or local government may appeal to the Keeper the failure or refusal . . . to nominate the property". *Id.* § 60.12(a).