MOODY HILL FARMS LIMITED PARTNERSHIP, Douglas Durst, Susanne Durst, Raymond McEnroe, Frank S. Perotti, and Doris Perotti, Plaintiffs–Appellees,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, NATIONAL PARKS SERVICE, Defendant–Appellant.

No. 98–6052.

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1999.

Decided April 20, 1999.

Robert W. Sadowski, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney, on the brief) New York City, for defendant-appellant.

Gary M. Rosenberg, (Norman Flitt, Todd E. Soloway, Alan Garten on the brief) Rosenberg & Estis, P.C. New York City, for plaintiffs-appellees.

National Trust for Historic Preservation in the United States and Preservation League of New York State (Paul W. Edmondson, General Counsel, Elizabeth S. Merritt and Edith M. Shine, Assistant General Counsel, National Trust for Historic Preservation, Washington, D.C.), filed a brief as Amici Curiae in support of defendant-appellant.

Friends of Coleman Station, Inc. (Whitney North Seymour, Jr. and Peter James Clines of Landy & Seymour, New York City) filed a brief as Amicus Curiae in support of defendant-appellant.

BEFORE: NEWMAN, WALKER, and CALABRESI, Circuit Judges.

WALKER, Circuit Judge.

Plaintiffs-appellees, residents of the hamlet of Coleman Station in New York state, claimed in the United States District Court for the Southern District of New York (Robert W. Sweet, *District Judge*) that the Keeper of the National Register of Historic Places, an officer of the National Park Service, acted arbitrarily and capriciously, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, when she denied plaintiffs-appellees' petition to remove Coleman Station Historic District from the National Register. After the district court granted summary judgment to plaintiffs-appellees, *see Moody Hill Farms Ltd. Partnership .v. United States Dep't of Interior,* 976 F.Supp. 214, 222–23 (S.D.N.Y.1997), the Park Service appealed.

At the heart of this case is a dispute between neighboring landowners about the future of Coleman Station, a hamlet in the Town of Northeast in Dutchess County, New York. Plaintiffs either are associated with Moody Hill Farms Limited Partner-

ship, which operates a composting facility and organic farm on property within Coleman Station, or own farms within or adjacent to Coleman Station. The movement to list Coleman Station on the state and national registers of historic places was initiated by other landowners within Coleman Station who have made no secret of their opposition to Moody Hill Farms' composting activities, which they see as a threat to the district's traditional character.

In 1993, the latter group succeeded in obtaining listing for Coleman Station on the New York State Register of Historic Places. The New York State Office of Parks, Recreation and Historic Preservation ("NYHP"), pursuant to federal regulation, simultaneously nominated Coleman Station for listing on the National Register, and Coleman Station was placed on the National Register. Soon thereafter, plaintiffs challenged the New York listing on procedural grounds in state court and succeeded in having the listing removed. Plaintiffs then petitioned the Keeper to have the national listing annulled. After the Keeper denied their petition, plaintiffs filed the present suit, alleging violations of the APA and their due process rights.

With respect to the APA claim, the district court concluded that, because the criteria for the state and national registers are identical, eligibility for listing on the national register was destroyed once the state listing was voided. The district court further concluded that the procedural errors in the state listing contaminated the national nomination. Finally, the district court concluded that the Keeper erred in failing to consider an opinion by a Deputy Commissioner of the NYHP, forwarded along with plaintiffs' petition to remove Coleman Station from the National Register, that the property may lack historic integrity. The district court also denied summary judgment to defendant on plaintiffs' due process claim.

We disagree with the district court's conclusions regarding the APA claim. Because the Keeper has independent authority to determine the eligibility of properties and to add them to the National Register, the annulment of the state listing did not automatically void the national listing. Therefore, we reverse and remand for entry of judgment for defendant-appellant.

## BACKGROUND

The National Historic Preservation Act of 1966, 16 U.S.C. § 470 *et seq.*, authorizes the Secretary of the Interior to expand and maintain a National Register of "districts, sites, buildings, structures, and objects significant in American history, architecture, archaeology, engineering and culture." *Id.* § 470a(a)(1)(A). The regulations governing the procedures for listing properties on the National Register are set forth at 36 C.F.R. pt. 60. Properties may be added to the National Register in several ways, including nomination by an approved state historic preservation program, as in this case, or by a federal agency, by an individual in a state where there is no approved historic preservation program, by act of Congress or Executive Order, or by a declaration by the Secretary of the Interior. All nominations to the National Register, except those made by Act of Congress, Executive Order, or declaration by the Secretary of the Interior, must be approved by the Park Service. *See* 36 C.F.R. § 60.1(b).

On June 8, 1993, the New York State Review Board for Historic Preservation voted unanimously to nominate Coleman Station for listing on the state and national registers. The Review Board's decision was sent to the NYHP, New York's approved Historic Preservation Program, which, on August 12, 1993, approved the recommendation without written opinion and forwarded the nomination to the Keeper of the National Register. More than two months later, on October 25, 1993, property owners within the Coleman Station district received notification of the state listing.

On August 31, 1993, the Park Service published notice in the Federal Register

that Coleman Station was under consideration for entry in the National Register. On September 30, 1993, Coleman Station was listed in the National Register, and the Park Service notified the NYHP of the national listing. Approximately one year later, on December 30, 1994, the NYHP notified property owners within the district of the national listing.

Following the state listing, plaintiffs filed an Article 78 proceeding in the New York Supreme Court in Dutchess County. They sought an annulment on various grounds, including that the state listing was accomplished in violation of the procedures set forth at N.Y.Comp.Codes R. & Regs. tit. 9, § 427.5. These regulations provide, *inter alia*, that the NYHP must notify each owner of privately owned property of a decision relating to the listing of a property on the State Register no later than 45 calendar days after the decision has been made. *See id.* § 427.5(f)(1). The regulations also provide that the NYHP must issue its decision in writing, setting forth the findings in support of the decision. *See id.* § 427.5(d). By opinion dated June 29, 1994, the state court held for plaintiffs that the NYHP's failure to comply with these procedures vitiated the state listing. *See In re Moody Hill Farms Ltd. Partnership v. New York State Office of Parks, Recreation and Historic Preservation*, No. 94/0324, slip op. at 3–4 (N.Y.Sup.Ct. June 29, 1994). The state court did not reach the merits of whether Coleman Station met the criteria for eligibility for listing.

Plaintiffs then petitioned the Keeper to delist Coleman Station from the National Register. In conformity with the regulations set forth at 36 C.F.R. § 60.15(c), plaintiffs filed their petition with the NYHP, which reviewed the petition and, at plaintiffs' request, forwarded it to the Keeper. In a March 9, 1995, letter to plaintiffs, which was included with the materials sent to the Keeper, the NYHP set forth its analysis of the petition. Regarding the merits of Coleman Station's eligibility for listing, the letter noted that questions had been raised at the meeting of the

State Review Board regarding the historic integrity of the district that "should be evaluated by the Keeper of the National Register." Regarding the procedural errors in the state listing, the letter concluded that

> [t]he allegations in the petition about "procedural deficiencies" do not appear to be a basis for removal. The State Court in the proceeding referred to in the petition found that the Agency failed to follow certain procedures relating to the listing on the State Register. These procedural errors are not related to the listing of Coleman Station Historic District on the National Register. In response to the other procedural issues raised in the petition, the Agency sent out notices of the listing on the National Register on December 30, 1994, to all the property owners in the district; the federal rules do not require that notice be sent to property owners adjacent to a proposed district.

By letter dated August 18, 1995, the Keeper notified plaintiffs that their petition to remove Coleman Station from the National Register was denied. The Keeper reviewed and rejected each of plaintiffs' arguments. She explained that the district was worthy of listing according to the established criteria, and that the procedural errors in the state listing did not vitiate the national listing. Thus, although Coleman Station is no longer on the New York State Register of Historic Places, it remains on the National Register of Historic Places.

At a February 2, 1995 meeting, the New York State Review Board for Historic Preservation tabled a motion to re-nominate Coleman Station for state listing. Votes were insufficient to pass a motion to re-nominate or to definitively defeat one. At stake in this litigation appears to be the risk that, if the national listing is upheld, Coleman Station's state listing will be automatically restored without any further Board action. Under New York law, any property that is listed on, or even nominat-

ed to, the National Register is deemed listed on the state register. *See* N.Y.Comp.Codes R. & Regs. tit. 9, § 427.1. Although national listing does not burden private landowners in any respect, and requires only that federal agencies take into account the effect of any proposed action on protected property, *see* 36 C.F.R. § 60.2(a), state listing may impose burdens on landowners within a district, such as requiring them to prepare an Environmental Impact Statement in order to obtain state approval for modifications, *see* N.Y.Comp.Codes R. & Regs. tit. 6, § 617 (setting forth regulations under New York's State Environmental Quality Review Act ("SEQRA"), N.Y.Envtl.L. § 8–101 *et seq.*).

## DISCUSSION

### I. *Plaintiffs' APA Claim*

■■■ Resolution of plaintiffs' APA claim turns on a single legal question: does the Keeper have independent authority to determine whether properties are eligible for listing on the National Register and to name them to the National Register without the agreement of a State's Historic Preservation Program?[1] We find that the Keeper does have such independent authority and that, therefore, plaintiffs' APA claim is without merit.

We begin by looking at the regulations governing the listing of properties on the National Register. These regulations establish five mechanisms for the listing of a property:

(1) Those Acts of Congress and Executive orders which create historic areas of the National Park System administered by the National Park Service, all or portions of which may be determined to be of historic significance consistent with the intent of Congress;

(2) Properties declared by the Secretary of the Interior to be of national sig-

nificance and designated as National Historic Landmarks;

(3) Nominations prepared under approved State Historic Preservation Programs, submitted by the State Historic Preservation Officer and *approved by the NPS;*

(4) Nominations from any person or local government (only if such property is located in a State with no approved State Historic Preservation Program) *approved by the NPS* and;

(5) Nominations of Federal properties prepared by Federal agencies, submitted by the Federal Preservation Officer and *approved by NPS.*

36 C.F.R. § 60.1(b) (emphasis added). Where a nomination comes through a state historic preservation program, the regulations reserve final authority for the Park Service to determine whether the property will be added to the National Register.

This reservation, combined with the Secretary of the Interior's power to name a property for listing *sua sponte,* strongly supports the inference that the Keeper has independent authority to determine whether a property should be listed, even where a nomination initially comes through a state preservation program. Indeed, the regulations require that even where there is a disagreement within a state program about a property's eligibility for listing, such nominations must be forwarded to the Keeper along with an explanation of the disagreement. *See* 36 C.F.R. § 60.6(p).

Every circuit court to have considered the federal government's authority under the National Historic Preservation Act and related statutes to determine a property's eligibility for the National Register has concluded that the federal government is not bound by the determinations of local authorities. For example, in *Stop H–3 Association v. Coleman,* 533 F.2d 434 (9th

---

1. For the purposes of this analysis, we will assume that the State Preservation Review Board's failure to re-nominate Coleman Station for listing on the state register after the state court's annulment of the first state listing amounts to a statement by the Board that, in its opinion, the district was not eligible for listing.

Cir.1976), the state of Hawaii planned to build a federally-financed highway through a valley that a private citizens' group sought to protect. The citizens' group petitioned the Secretary of the Interior to place the valley on the National Register. The Secretary determined that the valley was eligible for listing on the basis of its local historic and cultural value.

Subsequent to that determination, the Hawaii Historic Places Review Board, a state body responsible for evaluating and nominating Hawaiian properties for inclusion in the state and national registers, issued a finding that the valley was of only marginal local significance, a classification that would afford the valley no protection from destruction. *See id.* at 439–40. The question presented to the Ninth Circuit was whether the Secretary of the Interior (operating through the Keeper) had the authority to deem a property worthy of listing on the National Register on account of its state or local significance despite the state authorities' determination that the property was of marginal or no local significance. *See id.* at 441.

The Ninth Circuit upheld the authority of the Secretary. *See id.* at 441–43. Reviewing the history and purposes of the National Historic Preservation Act, the court noted that

[t]he Act does not distinguish in any way between properties of "national" significance and those of "state or local" significance. There is nothing whatsoever in the Act or its legislative history to indicate that the Secretary may name some properties to the Register—those of importance in the history of a region, state, or locality—only after obtaining the concurrence of state and local authorities. For the purposes of the Register, properties of national, state, and local significance are treated equally. They are all deemed significant in *American* history, and they should be. If it should be held that the Interior Secretary has no power to determine that properties have state or local historic significance, there would, in our view, be a virtual nullification of the NHPA.... Only properties

of "national" significance would have any lasting protection from destruction. Whenever a city or state preferred a Federally-funded highway to an historic site, the local body could simply declare the site insignificant. Such a holding would be without precedent and would completely defeat Congress's clear attempt to protect such properties by passing the NHPA....

*Id.* at 441 n. 13 (emphasis in original). The court concluded that

[s]ince the Interior Secretary is the only official authorized to name properties to the National Register, we have no doubt that he has "jurisdiction" to determine whether properties have state or local historic significance.... Consequently, *the Interior Secretary's determination that [a particular site] is eligible for inclusion on the National Register as a site of local historic importance is not vitiated, and cannot be vitiated, by the State Review Board's finding that the [site] has only "marginal" significance.*

*Id.* at 441 (emphasis added).

In *Named Individual Members of the San Antonio Conservation Society v. Texas Highway Department,* 446 F.2d 1013, 1025–27 (5th Cir.1971), the Fifth Circuit considered whether § 4(f) of the Department of Transportation Act of 1966, 23 U.S.C. § 138, which applies to sites on or eligible for the National Register, gave the Secretary of Transportation final authority to determine a property's significance for purposes of whether the property should be protected from highway construction. As in *Stop H–3,* the case arose due to a city's expressed preference for a federally-funded highway over a park. The City Council had passed a resolution declaring the disputed property to be "of primary local significance as part of the right of way for the North Expressway and of secondary local significance as parts of park and recreation areas." *Named Individual Members,* 446 F.2d at 1025–26 (emphasis omitted).

The Fifth Circuit held that the City's preference was not relevant, because in enacting § 4(f) of the Transportation Act Congress had already determined that the decision between parks of local significance and federally-funded highways should not be in the hands of local authorities. *See id.* at 1026. The fact that the City Council did not consider the property to be of significance as a park was not determinative of whether it was protected. That decision rested with the Secretary of Transportation, who was directed by the Transportation Act to work in conjunction with the Secretary of the Interior and other agency heads to develop transportation plans that "include measures to maintain or enhance the natural beauty of the lands traversed." 23 U.S.C. § 138.

■ Plaintiffs do not cite any legal authority, contrary to *Stop H-3* and *Named Individual Members,* to support the proposition that local authorities have the final word on a property's eligibility for listing on the National Register. Instead, they rely on the argument that the procedural errors that occurred in the state listing process in this case render the national listing null and void. This argument assumes that the national listing process incorporates state procedural requirements whenever a property is brought to the Keeper's attention by a state preservation program. We disagree.

Nothing in the federal regulations governing the procedural requirements concerning the listing of properties on the National Register supports plaintiffs' position that compliance with state procedural requirements is a predicate to national listing. These regulations provide, *inter alia,* that property owners within a district must be given at least 30 but not more than 75 days' notice of the state's intent to bring the nomination of a district before the State Review Board, and an opportunity to comment in writing. *See* 36 C.F.R. § 60.6(b), (d). Unless a majority of property owners objects by notarized statement to the nomination, notice that a property has been nominated for listing on the

National Register must be published in the Federal Register within 45 days of the Keeper's receipt of the nomination. *See id.* § 60.6(r). If a majority of property owners objects, the Keeper must review the nomination and make a determination of eligibility within 45 days of receipt of the objection. *See id.* § 60.6(s). If the property is listed in the National Register, the State Historic Preservation Officer, the official charged with forwarding nominations to the Keeper, is required to inform the property owners of the listing. *See id.* § 60.6(u). The method of notification depends upon the number of property owners within the district. *See id.* There is no time limit, however, for when notification of listing on the National Register must be given.

The regulations also provide a mechanism for parties to petition the Keeper for the removal of a property from the National Register. *See id.* § 60.15. The grounds for removal include (1) the property no longer meets the criteria for listing due to loss or destruction; (2) additional information shows that the property does not meet the eligibility criteria; (3) errors in professional judgment were made regarding eligibility; or (4) there was prejudicial procedural error in the nomination or listing process. *See id.* There is no time limit following the listing of a property on the National Register governing when a party may petition for its removal.

As the foregoing brief discussion suggests, these regulations establish a comprehensive set of procedural requirements that must be met for a property to be listed on the National Register upon the nomination of a state preservation program. However, nowhere in the regulations is there a requirement that state preservation programs also comply with *state* procedural requirements regarding nominations of properties for the national register. Although prejudicial error in the nomination or listing process is a ground for removal from the national register, *see* 36 C.F.R. § 60.15, we read this provision as relating to errors in the *national* nomi-

nation or listing process, not errors in the state nomination process. The effect of reading a requirement of compliance with state procedural rules into the federal scheme, it seems to us, would add unnecessary prolixity and could lead to a maze of disparate procedures for national listing from state to state. Accordingly, since there has been no allegation that the Park Service failed to comply with its own procedural requirements, plaintiffs' procedural argument must fail.

 In the absence of any federal procedural failings, we do not find that the Keeper acted arbitrarily or capriciously, in violation of the APA, when she denied plaintiffs' petition to remove Coleman Station from the National Register on account of NYHP's failure to comply with state procedural requirements. Nor do we find that the Keeper failed to consider all relevant factors regarding the district's eligibility, including the purported opinion by the NYHP official who transmitted plaintiffs' removal petition to the Keeper that the district may lack historical integrity. We have reviewed the letter that plaintiffs argue conveys this opinion and find the district court's observation that "[t]he letter stated that the boundaries may be defective and questioned the historic integrity of the district, the threshold requirement for National Register listing," 976 F.Supp. at 223, to be clear error. Rather than expressing an independent view regarding the district's integrity, the letter sets forth concerns that had been raised before the State Preservation Review Board, and recommends that the Keeper make an independent evaluation regarding the district's eligibility.

 Finally, we reject plaintiffs' contention that the state procedural flaw, even if it does not require delisting in some cases, required delisting in this case in the absence of an affirmative federal finding of eligibility for federal listing. Once the federal listing occurred, plaintiffs had the opportunity to seek to persuade the Keeper that the property does not meet the eligibility criteria, and the Keeper's obligation,

as we have noted, was to consider all relevant factors bearing on eligibility. The Keeper fulfilled this obligation. Though the end result is a national listing without an explicit finding of federal eligibility, that result does not contravene any federal requirement in a case such as this where the listing results from a state nomination, albeit one that was procedurally flawed.

## II. *Plaintiffs' Contention Under the Due Process Clause*

 Having determined that plaintiffs' APA challenge must fail, we turn to their contention that the district court's judgment should be upheld on the alternate ground that the Keeper's action violated their rights under the Due Process Clause. We have jurisdiction to consider any contention, supported by the record, that arguably supports the judgment. In exercising that jurisdiction, we may consider the legal sufficiency of the contention.

 In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court outlined the concerns that a court must weigh in evaluating a due process challenge. It stated that the evaluation of a due process claim

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893. "The first question in any due process inquiry is whether the plaintiff has a constitutionally protected interest." *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7,* 167 F.3d 784, 789 (2d Cir.1999). To succeed on a claim of a procedural due process violation, "a plaintiff must establish that state action deprived him of a protected property inter-

est." *Sanitation & Recycling Indus., Inc. v. City of New York,* 107 F.3d 985, 995 (2d Cir.1997).

We reject plaintiffs' due process argument because national listing on its own does not impose any burdens on plaintiffs' use of their property. National listing constrains only the ability of departments of the federal government to take action affecting a listed property without first considering the effect of that action on the property. *See* 36 C.F.R. § 60.2(a); *Stop H–3,* 533 F.2d at 437–38; *Named Individual Members,* 446 F.2d at 1021–22. Plaintiffs have not alleged that this constraint on federal action implicates their property interests.

It is, rather, the burdens associated with listing on the New York register with which plaintiffs are concerned. These burdens include those imposed by New York's SEQRA and the attendant risk that because plaintiffs' property is subject to regulation under SEQRA, it will be less valuable in securing credit from lenders. Federal law is relevant to this scheme only because New York automatically adds to its register of historic places any property nominated to or deemed eligible for listing on the National Register. *See* N.Y.Comp. Codes R. & Regs. tit. 9, § 427.1.

The fact that New York has chosen to tie its register to the national register, however, does not transform plaintiffs' due process claim—predicated on the burdens imposed by state law—into a due process claim against the National Park Service. In the absence of any allegation that national listing on its own imposes a burden that affects plaintiffs' property interests, plaintiffs' due process claim against this defendant must fail.

## CONCLUSION

The judgment of the district court is reversed and the case is remanded for entry of judgment for defendant-appellant.